A jury convicted Thomas Douglas Arthur of murder. The trial court imposed a capital sentence. The Court of Criminal Appeals upheld Arthur's conviction and sentence. Arthur v.State, 711 So.2d 1031 (Ala.Crim.App. 1996). We affirm.
More than 20 years ago, Arthur's relationship with his common-law wife ultimately led to his brutally murdering a relative of the woman. Arthur shot the victim in the right eye with a pistol, causing nearly instant death. He was convicted in a 1977 trial and was sentenced to life imprisonment.
While on work release during the life sentence, Arthur had an affair with a woman that ultimately led to his brutally murdering that woman's husband, Troy Wicker, in 1982. Arthur shot Wicker in the right eye with a pistol, causing nearly instant death.
A jury of Arthur's peers convicted him of the murder of Troy Wicker, and the trial court imposed a capital sentence. That conviction was reversed. Ex parte Arthur, 472 So.2d 665
(Ala. 1985). A second jury of Arthur's peers convicted him of the murder of Troy Wicker, and the trial court again imposed a capital sentence. That second conviction also was reversed.Arthur v. State, 575 So.2d 1165 (Ala.Crim.App. 1990), cert. denied, 575 So.2d 1191 (Ala. 1991).
After two complete trials and successful appeals, Arthur asked the trial court to allow him to act as co-counsel in his own defense. Specifically, Arthur requested that one of his two trial attorneys be removed and that Arthur be allowed to act as co-counsel in place of the removed attorney. The trial court granted Arthur's request to act as his own co-counsel along with the other qualified attorney, and the court put the replaced attorney on standby status. Arthur's co-counsel examined witnesses, made opening and closing arguments, and made numerous objections. Arthur, in consultation with his co-counsel, took an active role in cross-examining witnesses, in formulating objections, and in other matters.
The third jury of Arthur's peers convicted him of the murder of Troy Wicker.[1] At the sentencing phase of the trial, Arthur asked the trial court to allow him to argue for a capital sentence. The evidence showed that Arthur believed that if he received a capital sentence the sentence would not actually be carried out. Instead, Arthur believed that with a capital sentence he would receive better prison accommodations, more access to the law library, more time to devote to his appeal, a more extensive appeals process, and, based on his prior experience with the capital appellate process, an increased chance for a third reversal. After cautioning Arthur against this course of action, the trial court allowed Arthur to proceed, but refused to exclude mitigating evidence from the sentencing phase of the trial. Eleven jurors recommended capital punishment. After thoroughly reviewing the aggravating and mitigating circumstances, the trial court imposed a capital sentence for the murder of Troy Wicker.[2]
After three trials, four appellate reviews, approximately 10 different attorneys, and numerous delays and continuances, Arthur raises over 40 issues before this Court. We *Page 1099 
defer to the opinion of the Court of Criminal Appeals with respect to all but two of these issues: (1) whether Arthur's acting as his own co-counsel required a formal colloquy between Arthur and the trial court and an express waiver of his right to full representation by counsel; and (2) whether Arthur's request for capital punishment was made knowingly and voluntarily.
 Defendant's Acting as Co-counsel
Arthur contends that the trial court erred in allowing him to serve as his own co-counsel without first holding a formal colloquy to determine that Arthur had made his decision knowingly and voluntarily. We disagree.
The Sixth Amendment to the United States Constitution provides in pertinent part:
 "In all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."
(Emphasis added.) The Supreme Court of the United States has interpreted these words to afford a criminal defendant the right to be represented by an attorney, see Gideon v.Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the right to represent himself without the assistance of counsel, see Faretta v. California, 422 U.S. 806,95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "Because these rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States."Faretta, 422 U.S. at 818 and n. 14, 95 S.Ct. at 2533 and n. 14.
On the one hand, the Constitution guarantees an accused the right to assistance of counsel in his defense. On the other hand, it guarantees him the right to abandon the assistance of counsel and to present his own defense. Such an abandonment must be accompanied by a showing in the record that the accused made a knowing and intelligent decision to forgo counsel. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. The trial court did not engage in a formal colloquy with Arthur regarding the disadvantages, if any, of hybrid representation, and Arthur did not expressly waive the right to full representation by counsel. Arthur contends that by granting his request for partial self-representation, without having taken these procedural safeguards, the court infringed his right to assistance of counsel.
Faretta, however, did not require a formal colloquy and an express waiver, as Arthur contends. Faretta,422 U.S. at 835-36, 95 S.Ct. at 2541-42, requires the following:
 "The record [must] affirmatively show that [the accused] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. . . . For [this purpose, the accused's] technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself."
(Emphasis added.) See Fitzpatrick v. Wainwright, 800 F.2d 1057,1065 (11th Cir. 1986) ("The ultimate test is not the trial court's express advice, but rather the defendant's understanding."). Arthur's literacy is shown in the record by his pre-trial correspondence with the trial court. Arthur's competency and understanding with respect to his decision to act as co-counsel was shown by his experience in the trial and appellate process. This was Arthur's fourth murder trial, his third for the murder of Troy Wicker. Arthur had been heavily involved in the appeals from his first two convictions for Troy Wicker's murder. He had read both records from the previous trials and had an acute understanding of what he was doing. Accordingly, we conclude that Arthur knowingly and intelligently requested to act as his own co-counsel and that in doing so he implicitly waived full representation of counsel.[3] *Page 1100 
 Request For Capital Punishment
Arthur contends that the trial court erred in allowing him to request a capital sentence without the court's first ensuring that his decision to do so was knowing and voluntary. During the sentencing phase of Arthur's trial, Arthur argued to the jury in favor of capital punishment. Arthur told the jury that if he received a capital sentence, he would get an automatic appeal, that review of the appeal was faster, and that his appeal would be given heightened scrutiny. Arthur also acknowledged that as a prisoner with a capital sentence, he would receive better accommodations and more access to the prison's law library.
Arthur's decision to argue in favor of capital punishment was made knowingly, intelligently, and voluntarily. Prior to trial, Arthur wrote a letter to the trial court stating that if found guilty he would ask for capital punishment. Arthur explained to the trial court that he did not have a death wish, but that he would receive numerous practical and procedural advantages if he received a capital sentence. The trial court ensured that Arthur discussed this decision with his co-counsel, who tried to discourage him from such a course. Arthur's decision was based on his previous experience in obtaining reversals of his two earlier convictions and on his experience in prison. Arthur has, in fact, received better treatment in prison. He has had liberal access to the law library. He has received an extra, automatic, review by this Court.
It is not for this Court to second-guess trial tactics or strategy. See United States v. Long, 674 F.2d 848, 855 (11th Cir. 1982) (stating that appellate courts should not second-guess trial tactics such as decisions regarding which witnesses should be called to testify); Inmin v. State,668 So.2d 152, 155 (Ala.Crim.App. 1995) (stating that the decision not to move to dismiss an indictment was a matter of trial strategy and that the court would not second-guess the decision); Graham v. State, 593 So.2d 162, 166
(Ala.Crim.App. 1991) (stating that appellate courts will not second-guess trial tactics such as counsel's deciding not to object to prejudicial hearsay, even if the decision was a bad one); see generally State v. Bacon, 337 N.C. 66, 446 S.E.2d 542 (1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1120, 130 L.Ed.2d 1083
(1995) (holding that ineffective assistance of counsel did not occur when, in a capital resentencing proceeding, defense counsel informed the jury that the defendant had received a capital sentence in the first sentencing proceeding); People v.Bone, 154 Ill. App.3d 412, 107 Ill.Dec. 142, 506 N.E.2d 1033
(1987) (approving defense counsel's argument to the jury that his client was guilty, made in the hope of receiving a more lenient sentence). Arthur's tactic clearly shows that he was well informed on the state of the capital punishment system, and we hold that his decision to request capital punishment was a voluntary one.[4] *Page 1101 
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
[1] Arthur's accomplice, the wife of Troy Wicker, testified at trial regarding Arthur's murdering of her husband.
[2] Arthur's offense was a capital murder because it occurred within 20 years of his 1977 conviction for the previous murder. Ala. Code 1975, § 13A-5-40(a)(13).
[3] We note that the better practice is, of course, for the trial judge to hold a formal colloquy with a defendant who has either standby counsel or hybrid representation. Because of Arthur's obvious knowing and intelligent decision in this case, we need not reach the issue whether a waiver of the right to counsel is constitutionally required when a less informed accused is afforded standby counsel or hybrid representation. We note, however, that other courts are not in accord on this issue. Compare, e.g., Metcalf v. State, 629 So.2d 558 (Miss. 1993) (holding that there was no need for a waiver when the accused was never without the advice and expertise of his attorney);Phillips v. State, 604 S.W.2d 904 (Tex.Crim.App. 1979) (holding that no waiver is required where accused is afforded hybrid representation); and State v. Layton, 189 W. Va. 470,432 S.E.2d 740 (1993) (stating that when the accused receives a hybrid-type representation the trial court need not enter into as in-depth a colloquy as would be required for self-representation) with Maynard v. Meachum, 545 F.2d 273, 277
(1st Cir. 1976) (holding that the trial court should obtain a waiver of counsel from the accused who had standby counsel because the accused had less than full representation by counsel); United States v. Kimmel, 672 F.2d 720 (9th Cir. 1982) (holding that an accused must knowingly and intelligently waive right to counsel when he assumes core functions of the lawyer);State v. Frye, 224 Conn. 253, 617 A.2d 1382 (1992) (requiring same type of colloquy for hybrid representation as for self-representation); State v. Penson, 630 So.2d 274
(La.App. 1993) (stating that a waiver is required when the defendant performs many of the functions that an attorney traditionally performs); People v. Dennany, 445 Mich. 412, 445,519 N.W.2d 128, 142 (1994) (stating that there is "no reason why the standard for waiving part of a constitutional right should be different from the standard for waiver of the entire right").
[4] In any event, the trial court considered all the available evidence before imposing the sentence. It heard arguments on aggravating and mitigating circumstances, and it made specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, each mitigating circumstance enumerated in § 13A-5-51, and any additional mitigating circumstances offered pursuant to §13A-5-52. The trial court recognized as an aggravating circumstance that this murder was committed while Arthur was serving a life sentence for a previous murder. The trial court also recognized as a mitigating circumstance that the State did not prosecute two of Arthur's accomplices.