PER CURIAM.
 

 _JjThe state charged defendant by bill of information with second degree kidnapping in violation of La.R.S. 14:44.1, after an incident in which defendant confronted his ex-wife in the parking lot of Walgreens drug store located on Terry Parkway in Gretna, Louisiana, where she worked, and forced her into her car while armed with a handgun, drove her into Mississippi and then returned her to Gretna, where she finally escaped. After a trial by jury, the Hon. Hans J. Liljeberg, Judge, presiding, defendant was found guilty as charged. Defendant conducted portions of the trial in his own right, including cross-examination of his ex-wife and other state witnesses, while his court-appointed counsel conducted jury selection and other portions of the trial. Following the jury’s verdict, the trial court sentenced defendant to 30 years’ imprisonment at hard labor, the first two years without benefit of suspension of sentence, probation, or parole. On appeal, the Fifth Circuit conditionally affirmed defendant’s conviction and sentence but remanded the case to |2the trial court to conduct an evidentiary hearing for purposes of determining whether defendant had made a clear and unequivocal request to represent himself and whether the trial judge made sufficient inquiries into defendant’s competency to waive counsel and to assert his right to self-representation.
 
 State v. Mathieu,
 
 06-0946 (La.App. 5th Cir.5/29/07), 960 So.2d 296. The court of appeal took as its premise that, (“[w]hen an attorney partially represents a defendant who assumes functions that are at the core of an attorney’s traditional role, the defendant must still knowingly and intelligently waive his constitutional right to have his lawyer perform the core functions, in order to show that the defendant appreciates the possible consequences of mishandling the core functions that lawyers are more competent to perform.”) (citation omitted).
 
 Mathieu,
 
 06-0946 at 11, 960 So.2d at 303-04.
 

 After a total of three hearings, the first conducted by Judge Liljeberg and the last two by the Hon. Robert A. Pitre, after Judge Liljeberg recused himself on grounds that he was a potential witness in the cause, La.C.Cr.P. art. 671(A)(4), and following a second remand of the case,
 
 State v. Mathieu,
 
 08-0747 (La.App. 5th Cir.1/27/09), 8 So.3d 631, the Fifth Circuit ultimately concluded that the record “still fails to contain any motion by defendant requesting to represent himself, with or without assistance of counsel, or a ruling granting such a request,” and that “[t]he failure by the trial court to secure a valid waiver of counsel constitutes reversible error.”
 
 State v. Mathieu,
 
 09-0631, pp. 11-12 (La.App. 5th Cir.9/28/10), 49 So.3d 434, 441 (citation omitted). Given that determination, the court of appeal did not “even reach whether the trial judge made sufficient inquiries to assure that the waiver was knowingly and intelligently made,” but reversed defendant’s conviction and sentence and remanded the case for retrial.
 
 Id.
 

 liiWe granted the state’s application for
 
 review and
 
 reverse the
 
 decision below
 
 because the record in its entirety supports Judge Pitre’s finding that defendant made a knowing and voluntary waiver of his right to counsel when he cross-examined the state’s witnesses and gave the defense closing argument and that he had the capacity to make that voluntary choice.
 

 Despite the evidentiary proceedings below, the record remains insolubly ambiguous with respect to whether defendant
 
 *1017
 
 clearly and unequivocally asserted his right to self-representation at any time before trial. No formal motion or court ruling to that effect appears in the record of pretrial proceedings, but defendant’s court-appointed attorney, William Doyle, addressed the court on the morning of trial, June 12, 2006, and stated flatly that defendant had filed a motion asserting his right of self-representation, that Judge Liljeberg had signed it, and that the attorney was therefore in court merely as stand-by counsel to assist defendant after informing him “about the concepts of evidence, courtroom procedure and things of that nature.”
 
 [1]
 
 Doyle further elaborated that he had shared all of the state’s discovery responses with defendant and had on “numerous times,” gone over his case with him. Apparently agreeing that Doyle was correct and that, “I’ve granted that,” Judge Liljeberg nevertheless ^addressed defendant directly and gave him some “unsolicited advice” with respect to self-representation. He bluntly informed defendant that it was “a terrible idea” to represent himself “against two seasoned prosecutors,” who would “look[ ] for a way to turn it around and use it against you” every time he spoke. The court cautioned defendant that “[w]hen you take something personally, you don’t do a good job,” and admonished him that it expected him to act professionally in accord with the Code of Evidence and the Code of Criminal Procedure. Defendant replied that he did not have a “problem, really with Mr. Doyle representing me,” but voiced concern that the attorney might not ask every question he considered pertinent. The court informed defendant that he could not interject himself into a cross-examination conducted by Doyle but that he would have the opportunity to consult with his attorney before releasing the witness to make sure that counsel had covered everything defendant wanted addressed, if that were appropriate. Defendant replied, “Okay. Well, we could go along, you know, that way, Your [Hjonor.” Thereafter, counsel, who had represented defendant throughout discovery with the state and in all of the pretrial hearings, conducted jury selection, during which he consulted defendant with respect to making peremptory challenges, and gave the defense opening statement. Trial then recessed overnight.
 

 The proceedings began on the following morning with a statement by Doyle that, “Mr. Mathieu has indicated to me, this morning, that he will conduct portions of this trial, more particularly, cross-examination of witnesses.” The attorney further stated for the record that he had advised defendant that “we both can’t do the same
 
 *1018
 
 thing.” Judge Liljeberg then addressed defendant and informed him that, “You can’t, in the middle, throw your hands up and say, of Mr. Doyle, can you handle it for me. I’m not doing a good job. Once you start, you’re doing it.” Defendant replied, ‘Yes IfiSir,” and the evidentiary portion of trial began. Defendant conducted the entirety of defense cross-examination of his ex-wife, as well as that of a coworker at Walgreens who witnessed the confrontation in the parking lot, the manager of Walgreens who called 9-1-1 to report the incident, and two police officers. Doyle interjected himself at various points during this testimony, on one occasion suggesting to the court that “if co-counsel
 
 [ie.
 
 defendant] would want to call [the victim ex-wife] on his case, I’d ask that we keep the sequestration order in effect.” Doyle’s limited participation prompted the Court to reiterate to defendant that it was “not going to have Mr. Doyle stand up and explain every objection.... If you want to handle the witness then you’re going to handle the objections.”
 

 Defendant conducted the cross-examination of the state’s witnesses until the prosecution summoned Sergeant Kelly Jones for purposes of introducing a taped statement defendant gave to the officer following his arrest. After the state played the tape for jurors, and the prosecutor continued to examine the officer, Doyle advised the court that “Mr. Mathieu has informed me that he wants me to take over for this witness.” He then objected to the state’s line of questioning, and cross-examined the witness. At the close of Sergeant Jones’s testimony, when it was clear that the state was resting, Doyle then asked for a brief recess to determine whether defendant “is going to take the stand.” Doyle further advised the court that defendant “may be doing clos[ing argument].” Following the recess, Doyle informed the court that defendant would not be taking the stand, a statement defendant readily confirmed, but would make the defense closing argument. The attorney then announced that the defense rested. Thus, the defense summation of the case was done by defendant and not by counsel. However, Doyle conducted the charge conference with the court and the prosecutor before the court’s general instructions to the jury.
 

 |6In
 
 Faretta v. California,
 
 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court recognized a defendant’s Sixth Amendment right to conduct his own defense by making a knowing and voluntary waiver of his right to counsel and thereby asserting his right to represent himself. Assertion of that right “must also be clear and unequivocal.”
 
 State v. Bell,
 
 09-0199, p.17 (La.11/30/10), 53 So.3d at 448 (citing
 
 State v. Hegwood,
 
 345 So.2d 1179, 1181-82 (La.1977)).
 
 Faretta
 
 also explicitly sanctioned a procedure by which “a State may — even over objection by the accused — appoint a ‘stand-by counsel’ to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant’s self-representation is necessary.”
 
 Id.,
 
 422 U.S. at 834, n. 46, 95 S.Ct. at 2541. However, while
 
 Faretta
 
 permits the appointment of standby counsel to help “ensure the defendant’s compliance with basic rules of courtroom protocol and procedure,”
 
 McKaslcle v. Wiggins,
 
 465 U.S. 168, 183, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984), it does not require a trial judge to permit “hybrid” representation in which both counsel and a defendant participate actively as co-counsel in the conduct of trial.
 
 Wiggins,
 
 465 U.S. at 183, 104 S.Ct. at 953
 
 (“Faretta
 
 does not require a trial judge to permit ‘hybrid’ representation of the type Wiggins was actually allowed.... A defendant does not have a constitutional right to choreograph special appearances
 
 *1019
 
 by counsel.”). As a general rule, one to which this Court has long subscribed, an indigent defendant “ ‘has a right to counsel as well as the opposite right to represent himself, [but] he has no constitutional right to be both represented and representative.’ ”
 
 State v. Brown,
 
 03-0897, p. 29 (La.4/12/05), 907 So.2d 1, 22 (quoting
 
 State v. Bodley,
 
 394 So.2d 584, 593 (La.1981));
 
 see also Bell,
 
 09-0199 at 17, n. 14, 53 So.3d at 448 (“A defendant who is represented by counsel has no Sixth Amendment right to participate as co-counsel. However, this principle has typically 17rested on Faretta’s silence on the issue rather than any positive statement from the United States Supreme Court.”) (citations omitted); 3 Warren R. Lafave,
 
 Criminal Procedure,
 
 § 11.5(g), p. 768 (3rd ed. 2008)(“[T]wo [ ] concerns [other than administrative difficulties] probably play a more significant role in reaching the initial conclusion that hybrid representation can constitutionally be left to judicial discretion. Those concerns relate to the impact of hybrid representation on the role of counsel and to the typical use of hybrid representation to permit the defendant, in effect, to make an unsworn statement to the jury.”).
 

 Nevertheless, a trial court has the discretion to allow a defendant to act as his own co-counsel.
 
 United States v. Edwards,
 
 101 F.3d 17, 19 (2nd Cir. 1996)(“ ‘The decision to grant or deny “hybrid representation” lies solely within the discretion of the trial court.’ ”) (quoting
 
 United States v. Tutino,
 
 883 F.2d 1125, 1141 (2nd Cir.1989)). A trial court may require a defendant acting as co-counsel to conduct portions of the trial entirely in his own right, or may permit the defendant to act in tandem with counsel during cross-examination of witnesses and closing argument to the jury.
 
 See Brown,
 
 03-0897 at 32, 907 So.2d at 24 (after asserting his right of self-representation because he was dissatisfied with his defense team in the capital case, defendant solely conducted the cross-examination of some witnesses, participated in the defense cross-examination of other witnesses, and gave his own closing argument in addition to counsel’s closing remarks at the guilt stage). Hybrid representation in which a defendant acts in tandem with counsel in questioning witnesses or in presenting closing argument does not implicate
 
 Faretta. United States v. Cromer,
 
 389 F.3d 662, 683 (6th Cir.2004)(“Here, Cromer did not waive his right to counsel because he continued to receive substantial assistance from counsel, even while he was actually questioning the witness.”);
 
 United States v. Leggett,
 
 81 F.3d 220, 222 (D.C.Cir.1996)(defendant “merely sought and received the court’s permission to supplement his counsel’s examination and argument.”). However, to the extent that hybrid representation in which defendant and counsel “act, in effect, as co-counsel, with each speaking for the defense during different phases of the trial,” results partially in pro se representation, “allowing it without a proper
 
 Faretta
 
 inquiry can create constitutional difficulties.” 3 LaFave,
 
 Criminal Procedure,
 
 § 11.5(g), pp. 765-67.
 

 In the present case, it appears that defendant elected a form of hybrid representation in which his court-appointed attorney acted as more than stand-by counsel during trial “to ensure the defendant’s compliance with basic rules of courtroom protocol and procedure.”
 
 McKaskle,
 
 465 U.S. at 183, 104 S.Ct. at 954. Doyle conducted the entire voir dire examination and selection of the jury and gave the defense opening statement, cross-examined one of the state’s police witnesses, made objections even when they violated Judge Liljeberg’s all-in-or-all-out procedure, referred to defendant as his co-counsel, announced that the defense rested and
 
 *1020
 
 that defendant would not take the stand, and conducted the charge conference with the court. On the other hand, because the procedure imposed by Judge Liljeberg required defendant to act alone when he served as his own co-counsel, it demanded a partial waiver of his right to counsel in the areas that traditionally lie at the core of the defense trial function,
 
 i.e.,
 
 cross-examination of adverse witnesses and closing argument.
 
 Cf. Watkins v. Sowders,
 
 449 U.S. 341, 349-50, 101 S.Ct. 654, 658-59, 66 L.Ed.2d 549 (1981)(Due Process Clause does not absolutely require a judicial determination regarding the admissibility of identification testimony outside presence of the jury because “[cjounsel can both cross-examine the identification witnesses and |9argue in summation as to factors causing doubts as to the accuracy of the identification.”)(internal quotation marks and citation omitted).
 

 Although no consensus has formed, substantial authority exists, to which the Fifth Circuit panel in the present case fully subscribed, that a trial court must conduct an adequate
 
 Faretta
 
 colloquy when a defendant elects hybrid representation in which, at various stages of the trial, as in the present case, he acts entirely on his own as co-counsel.
 
 See, e.g., United States v. Davis,
 
 269 F.3d 514, 520 (5th Cir.2001) (to the extent that defendant questioned 14 of the 19 witnesses called at trial and gave his own closing argument, “ fhjybrid’ or no, the representation sought by Davis entailed a waiver of his Sixth Amendment right to counsel that required the safeguards specified in
 
 Faretta.”); United States v. Turnbull,
 
 888 F.2d 636, 638 (9th Cir.1989) (“If the defendant assumes any of the ‘core functions’ of the lawyer ... the hybrid scheme is acceptable only if the defendant has voluntarily waived counsel.”);
 
 Hill v. Commonwealth,
 
 125 S.W.3d 221, 228 (Ky.2004) (under an all-in-or-all-out procedure in which defendant cross-examined on his own four of five prosecution witnesses and conducted direct examination of two of five defense witnesses, during which counsel remained silent, “the trial court erred by not holding a
 
 Faretta
 
 hearing, issuing warnings, and making a finding as to whether Appellant’s waiver was knowing, intelligent, and voluntary.”) (citing
 
 Davis
 
 and distinguishing Leggett). However, contrary authority also exists.
 
 See Ex Parte Arthur,
 
 711 So.2d 1097, 1099 (Ala.1997)
 
 (“Faretta,
 
 however, did not require a formal colloquy and an express waiver, as Arthur contends.... The ultimate test is not the trial court’s express advice, but rather the defendant’s understanding. ... [W]e conclude that Arthur knowingly and intelligently requested to act as his own co-counsel and that in doing so he implicitly waived full representation of counsel.”)(footnote, internal quotation marks, and 11ftcitations omitted);
 
 People v. Jones,
 
 53 Cal.3d 1115, 282 Cal.Rptr. 465, 811 P.2d 757, 773 (1991) (“If ... a defendant chooses to be represented by counsel and the trial court allows the defendant a limited role as cocounsel, the defendant has not waived the right to counsel. The defense attorney retains control over the case and can prevent the defendant from taking actions that may seriously harm the defense. In that situation, the trial court may, but need not, warn the defendant of the problems of being cocounsel.”).
 

 In the present case, the record plainly shows that the trial court did not engage in a formal colloquy with defendant on the second day of trial with regard to the dangers and disadvantages of hybrid representation and defendant did not personally and expressly waive his right to full representation. However, even taking the court of appeal’s decision at its premise, and that a partial waiver of counsel requires the same solicitude from a trial judge as a full waiver, Judge Liljeberg had
 
 *1021
 
 admonished defendant on the first day of trial about the dangers and disadvantages of waiving counsel altogether. The judge had specifically informed defendant that he thought it was a mistake not to proceed ■with his appointed counsel, that he would be easy prey for the experienced prosecutors, and that defendant would be required to follow all of the rules in the Code of Evidence and the Code of Criminal Procedure. Counsel stated on the record that he had given much of the same advice to defendant. The advice discharged the court’s duty under
 
 Faretta
 
 that a defendant “should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.”
 
 Faretta,
 
 422 U.S. at 835, 95 S.Ct. at 2541 (internal quotation marks and citation omitted). More elaborate advice with respect to the maze of substantive and procedural rules governing the trial of criminal cases that a defendant representing | n himself would have to navigate may have been salutary,
 
 see, e.g., United States v. McDowell,
 
 814 F.2d 245, 249-50 (6th Cir.1987)(adopting the lengthy colloquy set out in
 
 1 Bench Book for United States District Judges
 
 1.02-2 to-5 (3d ed.1986) for the district courts within the circuit as a matter of its supervisory authority), but it was not required.
 
 Faretta,
 
 422 U.S. at 835-36, 95 S.Ct. at 2541 (“The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the ‘ground rules’ of trial procedure.... his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.”);
 
 State v. Santos,
 
 99-1897, p. 3 (La.9/15/00), 770 So.2d 319, 321 (“In this context, ‘the competence that is required of a defendant seeking to waive his right to counsel is the competence to
 
 waive
 
 the right, not the competence to represent himself.’”)(quoting
 
 Godinez v. Moran,
 
 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993) (footnote omitted));
 
 see also McDowell,
 
 814 F.2d at 249. (“The majority of the other circuits that have addressed this problem have adopted a ... nonformalistic approach to determining sufficiency of the waiver from the record as a whole rather than requiring a deliberate and searching inquiry.”) (citations omitted).
 

 The advice given by Judge Liljeberg prompted an assertion by defendant of his right to counsel, which he never subsequently withdrew, when he allowed Doyle to select a jury, thereby navigating the procedural and substantive rules regarding cause and peremptory challenges, and to make an opening statement. A personal colloquy between Judge Liljeberg and defendant,
 
 ie.
 
 a second
 
 Faretta
 
 dangers-and-disadvantages colloquy, a reminder of the advice given only the day before, arguably represented the preferred practice when Doyle announced at the beginning of the second day of trial that defendant would, in effect, make a partial waiver of his right | i2to counsel by conducting cross-examination of the state’s witnesses. Nevertheless, Doyle was still acting as defendant’s counsel and he made the statement in defendant’s presence and on his behalf.
 
 Cf. State v. Phillips,
 
 365 So.2d 1304, 1309 (La.1978) (although a personal colloquy of the court with defendant is preferable, an attorney’s statement in open court that the defendant waives trial by jury may be sufficient by itself to constitute a valid waiver if the defendant is present at the time and acquiesces in that statement). Defendant immediately acknowledged its import when he assented to Judge Lilje-berg’s advice that if he began questioning a witness he would have to see his cross-examination through to the end. The dangers and disadvantages of foregoing coun
 
 *1022
 
 sel during cross-examination of the state’s witnesses were plain enough from Judge Liljeberg’s explanation that defendant would be on his own, but so, too, were the advantages. Defendant had thereby-gained the intangible and unquantifiable advantage of personally confronting and cross-examining his ex-wife in open court about the altercation in the Walgreens parking lot, and then personally addressing jurors at the close of the evidence as to what it all meant.
 
 Faretta,
 
 422 U.S. at 834, 95 S.Ct. at 2540 (“[I]t is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense.”). That defendant conducted the cross-examination of nearly all of the state’s witnesses, particularly his ex-wife, although he left jury selection and the charge conference to Doyle, appeared entirely consistent with the concerns he had voiced on the preceding day that his court-appointed counsel, for whatever reason, might not ask all of the questions he thought pertinent to his defense. Nothing in the defendant’s conduct of trial after Doyle informed the court of his partial waiver of counsel suggested in any way that he was not “voluntarily exercising his informed free will,”
 
 Faretta,
 
 422 U.S. at 835, 95 S.Ct. at 2541, when he chose which witnesses Lsto cross-examine personally, and which witnesses he deferred to his court-appointed counsel, in marshaling his defense for closing argument to the jury.
 
 Cf. Bell,
 
 09-0199 at 17, 53 So.3d at 448 (“ ‘The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.’”) (quoting
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).
 
 [2]
 

 Nor does anything in the record suggest that defendant was not capable of making that choice knowingly and voluntarily.
 
 Faretta,
 
 422 U.S. at 835, 95 S.Ct. at 2541 (“The record affirmatively shows that Faretta was literate, competent, and understanding!)]”). The court of appeal pretermitted this question but the record in its entirety overwhelmingly supports Judge Liljeberg’s opinion, expressed at the evidentiary hearing conducted by Judge Pitre on second remand of the case by the Fifth Circuit, that “clearly Mr. Mathieu was capable of representing himself, he understood the nature of the charges against him, understood the range [of sentence] of the crime with which he was charged, and so on and so forth.” In fact, the numerous pro se motions filed in the record show that defendant understood he was charged with the second degree kid
 
 *1023
 
 napping of his ex-wife and that he was fully aware |14from the unsuccessful plea negotiations conducted by Doyle what he faced in terms of punishment. Defendant’s numerous motions were all articulate and coherent, as was his testimony at the suppression hearing on April 11, 2006. Nothing that transpired at trial gives rise' to any particularized concerns about defendant’s competency.
 
 [3]
 
 He also clearly had more than a passing acquaintance with the criminal law, as made plain by his post-verdict testimony at the hearing conducted by Judge Liljeberg on first remand of the case from the court of appeal, when he used the term “hybrid defense” several times to describe what he wanted from his working relationship with Doyle. Legal knowledge or skill is not strictly relevant to the determination of whether a defendant is competent to waive counsel,
 
 Faretta,
 
 422 U.S. at 836, 95 S.Ct. at 2541, but it underscored what the record otherwise overwhelmingly demonstrated about defendant’s capacity to make decisions with regard to his defense of the case.
 

 The decision of the Fifth Circuit is therefore reversed, defendant’s conviction and sentence are reinstated and affirmed in light of the court of appeal’s rejection of his other assignments of error on original appeal,
 
 Mathieu,
 
 06-0946 at 18-23, 960 So.2d at 308-10, and this case is remanded to the district court for purposes of execution of sentence.
 

 J^COURT OF APPEAL DECISION REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
 

 [1]
 

 . In fact, defendant had written a letter from the Jefferson Parish Correctional Facility to the criminal clerk for the 24th Judicial District Court shortly before trial asking that subpoenas issue for several witnesses. The letter clearly stated defendant's belief that, "I’m defending myself,” with the assistance of appointed counsel, and that he needed the witnesses subpoenaed,” "as Mr. Doyle has refused to do so.” Defendant testified at the hearing conducted by Judge Liljeberg on August 23, 2007, pursuant to the first remand of the case by the Fifth Circuit, that he had sent a motion to represent himself from the Winnfield Correctional Facility, where he was initially incarcerated as part of the post-Hurricane Katrina dislocations from the metropolitan New Orleans area. He had assumed, based on the assurances of inmate counsel, the motion had been signed.
 

 However, as the Fifth Circuit noted, the record does not contain the motion and the minutes fail to indicate that the court took any action with respect to sorting out defendant's representation by appointed counsel before the first day of trial. Neither defendant nor Judge Liljeberg, who testified at the third and last hearing conducted by Judge Pitre on May 11, 2009, could recall any formal proceeding conducted in court regarding self-representation before the first day of trial.
 

 [2]
 

 . At the hearing conducted by Judge Liljeberg on remand of the case from the Fifth Circuit, defendant claimed that Doyle had essentially left him to fend for himself at trial in cross-examining the state’s witnesses and in forcing him to give the closing argument, after strong-arming his decision not to take the stand. Defendant claimed that he had intended merely to provide Doyle with some of the questions he wanted the attorney to ask but that he otherwise intended to allow the attorney to conduct trial in its entirety. However, defendant conceded that he went considerably beyond that basic procedure when he cross-examined his ex-wife and other state witnesses and he did not account for Doyle's cross-examination of Sergeant Jones and what that said about the collaborative defense effort.
 

 A transcript of the hearing before Judge Liljeberg was available to Judge Pitre when he made his second, and final, ruling on defendant’s waiver of counsel and that ruling implicitly rejected defendant's post-verdict claim that Doyle had overborne his will in making a partial waiver of his right to counsel. Given the contemporaneous record of trial, we find no abuse of discretion by the court in discounting defendant’s testimony.
 

 [3]
 

 . The state called defendant's ex-wife as its first witness and he began cross-examination of her as follows:
 

 Q. Ms. Mathieu, you indicated in your statement to Detective Jones, that I came up behind you as you were getting into your car, and I began pushing you, is that correct?
 

 A. Yes.
 

 Q. And you also state — and here I'm reading from this because I'm reading a quote here, 'He told me that he — then you hesitated — he showed me a gun.’ Which was it, did I tell you I had a gun or I showed you I had a gun?
 

 This exchange alone shows clearly that defendant was literate and fully competent to make important decisions respecting defense of the case, particularly with regard to assuming the core function of cross-examining an adverse witness.