JAMES F. McKAY III, Chief Judge. •
11 Defendant, Dan McCorvey, appeals his conviction on possession of cocaine and his multiple offender adjudication. - For the •reasons that follow, we affirm defendant’s conviction and sentence.
STATEMENT OF THE CASE
On August 10, 2009, defendant was charged by bill of information with possession with intent to distribute cocaine. On April 8, 2010, defendant appeared for arraignment with attorney George Blair and pled not guilty. On November 22, 2010, the trial court found probable cause for the charge and denied a motion to suppress the evidence and statement filed by defendant.
On July 13, 2012, the trial court granted Mr. Blair’s motion to withdraw as counsel for defendant. On August 10, 2012, defendant appeared for a bench trial with attorney Joyce Sallah. The transcript of the pre-trial proceedings reflects that defendant was acting as “lead counsel” and' that Ms. Sallah was there to assist defendant as “co-counsel.” After denying defendant’s motion to continue, a bench trial was held.
Defendant was found guilty of possession of cocaine pursuant to La. R.S. 40:967(C)(2). Ms. Sallah filed a motion for new trial and for post-verdict | ¿judgment of acquittal, which was denied. On October 5, 2012, defendant was sentenced to five years at hard labor with credit for time--served. The motion to reconsider filed by Ms. Sallah was denied. ■
A multiple bill hearing began on June 14, 2013, at which time a mental competency hearing was ordered. On July 30, 2013, defendant was found competent to proceed, and the multiple bill hearing was rescheduled.[1] On August 1, 2013, the trial *43 court adjudicated defendant as a multiple offender based on three prior felony com victions and vacated his prior sentence. After finding that the twenty year sentence mandated by La. R.S. 15:529.1 was unconstitutionally excessive, the trial court sentenced defendant to ten years at hard labor pursuant to State v. Dorthey, 623 So.2d 1276 (La.1993).[2] Ms. Sallah filed a notice of appeal and designation of record and withdrew as counsel of record.
STATEMENT OF FACTS
On August 31, 2006, the narcotics unit of the New Orleans' Police Department (NOPD) conducted surveillance 'on‘Room 111 at the Econo Lodge motel, located on Chef Menteur Highway. Detective Samuel Palumbo (Det. Palumbo) testified that the NOPD received information from a concerned citizen that a subject known as “Buck” had been selling drugs at that location. “Buck” was described as medium in size, height, and weight and having a “messed up eye” |sor “one eye.” Defendant was identified at trial as the individual known as “Buck.”
Sergeant Jeff Sislo (Sgt. Sislo) testified that during the surveillance of Room 111, he observed three drug transactions take place. Specifically, Sgt. Sislo stated that he saw defendant hand over a small object after being given what looked like U.S. currency.. After the third transaction, Sgt. Sislo alerted Det. Palumbo and other supporting officers that an individual leaving Room 111 entered a red Ford Probe. Det. Palumbo stopped the vehicle.
Det. Palumbo testified that he observed the driver reach towards the headliner of the vehicle. He subsequently ordered the occupants out of the car. After searching the vehicle, he discovered a piece of crack cocaine between the headliner and the sun visor and arrested the driver. The driver was identified at trial as Wayne Degroy.
Det. Palumbo was advised by the Econo Lodge ‘ management that defendant checked into Room 111 on August 29. Defendant was supposed to check out on August 31, but he extended his stay until ■ September 1.[3]
Thereafter, Det. Palumbo applied for and obtained a search warrant of Room 111.[4] Both Det. Palumbo and Sgt. Sislo were present for the execution of the search warrant. Upon entering the room, the officers found defendant lying on the bed and discovered several pieces of crack on the entertainment center/television stand. The officers testified that there were crumbs around the crack, suggesting that the crack was being broken into smaller pieces and served. A search of ^defendant incident to his arrest revealed *44 two twenty dollar bills and a bag of marijuana.[5] During the arrest, defendant told the officers that the crack was not his, but that it was for the person who had previously left the room.
ERRORS PATENT REVIEW
A review of the record for errors patent reveals that the sentence imposed by the trial court is illegally lenient.
Defendant was initially sentenced to five years at hard labor for possession of cocaine. After being adjudicated as a multiple felony offender, the trial court vacated the original sentence and resentenced defendant to ten years.
La. R.S. 15:529.1(G) provides that any sentences imposed under the Habitual Offender Statute are to be served “without benefit of probation or suspension of sentence.” In this case, the trial court failed to include these prohibitions when imposing the sentence. However, pursuant to La. R.S. 15:301.1(A), which is self-activating, the sentence is deemed to have been imposed with these restrictions of benefits even in the absence of the district court delineating them.[6] State v. Williams, 2000-1725, pp. 10-11 (La.11/28/01), 800 So.2d 790, 798-99; State v, Byrd, 2012-0556, p. 14 (La.App. 4 Cir. 6/5/13), 119 So.3d 801, 809-810. Therefore, we need not correct this sentence. There are no other patent errors.
DISCUSSION
As his sole assignment of error, defendant contends that the trial court erred in allowing him to represent himself without conducting any inquiry as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, the United States Supreme Court recognized a defendant’s Sixth Amendment right to conduct his own defense by making a knowing and voluntary waiver of his right to counsel and thereby asserting his right to represent himself. See State v. Mathieu, 2010-2421, p. 6 (La.7/1/11), 68 So.3d 1015, 1018.
Faretta also explicitly sanctioned a procedure by which “a State may — even over objection by the accused — appoint a ‘stand — by counsel’ to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant’s self-representation is necessary.” Mathieu, 2010-2421, p. 6, 68 So.3d at 1018 (quoting Faretta, 422 U.S. at 835, n. 46, 95 S.Ct. at 2541). However, while Faretta permits the appointment of standby counsel to help “ensure the defendant’s compliance with basic rules of courtroom protocol and procedure,” it does not require a trial *45 judge to permit “hybrid” representation in which both counsel and a defendant -participate actively as co-counsel in the conduct of trial. Mathieu, 2010-2421, p, 6, 68 So.3d at 1018-1019 (quoting McKaskle v. Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984)). As a general rule, an indigent defendant “ ‘has a right to counsel as well as the opposite .right to represent himself, [but] he has no constitutional right to be both represented and representative.’” Mathieu, 2010-2421, p. 6, 68 So.3d at 1019 (quoting State v. Brown, 2003-0897, p. 29 (La.4/12/05), 907 So.2d 1, 22; State v. Bodley, 394 So.2d 584, 593 (La.1981)). “A defendant who is represented by counsel has no Sixth Amendment right to participate as co-counsel. However, this principle has typieally rested on Faretta ’s silence on the issue rather than any positive statement from the United States Supreme Court.” State v. Bell, 2009-0199, p. 17, n. 14 (La.11/30/10), 53 So.3d 437, 448 (internal citations’'bmitted).
Nevertheless, a trial court has the discretion to allow a defendant to act as his own co-counsel. Mathieu, 2010-2421, p. 7 (La.7/1/11), 68 So.3d 1015, 1019 (citing United States v. Edwards, 101 F.3d 17, 19 (2nd Cir.1996)). A trial cou^t may require a defendant acting as co-counsel to conduct portions of the trial entirely in his own right, or may permit the defendant to' act in tandem with counsel during cross-examination of witnesses and closing, argument to the jury. Mathieu, p. 7, 68 So.3d at 1019 (citing Brown, 2003-0897 at 32, 907 So,2d at 24 (after asserting his right of self-representation because he was dissatisfied with his defense team in the capital case, defendant solely conducted the cross-examination of some witnesses, participated in the defense cross-examination of other witnesses, and gave his own closing argument in addition to counsel’s closing remarks at the guilt stage)). Hybrid representation in which a defendant acts in tandem with counsel in questioning witnesses or in presenting closing argument does not implicate Faretta. Mathieu, p. 7, 68 So.3d at 1019 (citing United States v. Cromer, 389 F.3d 662, 683 (6th Cir.2004) (wherein the defendant “did not waive his right to counsel because he continued to receive substantial assistance from counsel, even while he was actually questioning the witness.”); United States v. Leggett, 81 F.3d 220, 222 (D.C.Cir.1996) (the defendant “merely sought and received the court’s permission to supplement his counsel’s examination and 17argument.”)). However, to the extent that hybrid representation in which defendant and counsel “act, in effect, as co-counsel, with each speaking for the defense during different phases of the trial,” results partially in pro se representation, “allowing it without a proper Faretta inquiry can create constitutional difficulties.” Mathieu, p. 8, 68 So.3d at 1020 (quoting 3 LaFave, Criminal Procedure, § 11.5(g), pp. 765-767); See also, State v. Carter, 2010-0614, p. 25 (La.1/24/12), 84 So.3d 499, 519-520.
Regarding hybrid representation, the Mathieu Court has stated, in pertinent part:
Although no consensus has formed, substantial authority exists ... that a trial court must conduct an adequate Faretta colloquy when a defendant elects hybrid representation in which, at various stages of the trial, as in the present case, he acts entirely on his own as co-counsel. See, e.g., United States v. Davis, 269 F.3d 514, 520 (5th Cir.2001) (to the extent that defendant questioned 14 of the 19 witnesses called at trial and gave his own closing argument, “ ‘[h]ybrid’ or no, the representation sought by Davis entailed a waiver of his Sixth Amendment right to counsel that required the safeguards specified in Faretta.”); United States v. Turnbull, 888 F.2d 636, 638 (9th Cir. *46 1989) (“If the defendant assumes any of the ‘core functions’ of the lawyer ... the hybrid scheme is acceptable only if the defendant has voluntarily waived counsel.”); Hill v. Commonwealth, 125 S.W.3d 221, 228 (Ky.2004) (under an all-in-or-all-out procedure in.which defendant cross-examined on his own four of five prosecution witnesses and conducted direct examination of two of. five defense witnesses, during which counsel .remained silent, “the trial court erred by not holding a Faretta hearing, issu- . ing warnings, and making a finding as to whether Appellant’s waiver was knowing, intelligent, and voluntary.”) (citing Davis and distinguishing Leg-gett ). However, contrary authority also exists. See Ex Parte Arthur, 711 So.2d 1097, 1099 (Ala.1997) (“Faretta, however, did not require a formal colloquy and an express waiver, as Arthur contends.... The ultimate test is not the trial court’s express advice, but rather the defendant’s understanding.... [W]e conclude that Arthur knowingly and intelligently requested to act as his own co-counsel and that in doing so he implicitly waived full representation of counsel.”)(footnote, internal quotation marks, and citations omitted); People v. Jones, 53 Cal.3d 1115, 282 Cal.Rptr. 465, 811 P.2d 757, 773 (1991) (“If ... a defendant chooses to be represented by counsel and the trial court allows the defendant a limited role as co[-]counsel, the defendant has 18not waived the right to counsel. The defense attorney retains control over the case and can prevent the defendant from taking actions that may seriously harm the defense. In that situation, the trial court may, but need not, warn the defendant of the problems of being co[-]counsel.”).
Mathieu, at pp. 9-10, 68 So.3d at 1020.
In State v. Carter, supra, the Supreme Court explained what trial courts must consider, when a defendant asserts the right to self-representation:
Should a defendant wish to waive counsel and represent himself, “[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ... Further, a defendant ' must be made aware of the dangers and disadvantages of self-representation so that the record démonstrates that “ ‘he knows what he is doing and his choice is made with his eyes open.’” Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). A defendant, in other words, must know the consequences of his action. City of Monroe v. Wyrick, 393 So.2d 1273, 1275 (La.1981). The assertion of the right must also be clear and unequivocal. See Faretta, 422 U.S. at 835, 95 S.Ct. at 2541; see also State v. Hegwood, 345 So.2d 1179, 1181-82 (La.1977).
Carter, 2010-0614, p. 25 (La.1/24/12), 84 So.3d 499, 520.
The trial court is given much discretion in determining whether the defendant’s waiver was knowing and intelligent. State v. Victor, 2013-888, p. 12 (La.App. 5 Cir. 12/23/14), 167 So.3d 118, 126 (citing State v, LaGarde, 2007-288, p. 12 (La.App. 5 Cir. 10/30/07), 970 So.2d 1111, 1120): An appellate court should not reverse the trial court ruling absent an abuse of its discretion. Id.
Defendant correctly notes that the record is silent as-to whether the trial court *47 advised him- of the disadvantages of ■ self-representation. The transcript of the proceedings prior to trial provide as follows:
BY MS. SALLAH:
| flJust to inform the State that, Joyce Sallah as co-counsel,' there are motions to quash outstanding ... that the trial court has to rule on.
[[Image here]]
BY THE COURT:
Okay. All right. I’ve got them. Ms. Sallah I don’t have to rule on them now. Let’s start the trial, please. Y’all ready?
BY MS. SALLAH:
Your Honor, I believe Mr. McCorvey asked for a continuance.
BY THE COURT:
That’s denied. Y’all ready? State?
BY MR. GHAI [the Prosecutor]:
Judge, yes. Judge, I would just like to know Mr.- McCorvey’s representation status just so I - can know who to address.
BY THE COURT:
Mr. McCorvey said he’s lead counsel. Am I right? That’s what you said. '
BY DEFENDANT MCCORVEY:
I don’t have an attorney present. I’m going to have to go with it, sir,
BY THE COURT:
That’s what you said you wanted to do?
BY DEFENDANT MCCORVEY: ■■
That’s fíne. I don’t have no [sic] other choice. I’m ready to get it over'with. I’m trying to get out to help my father. My father need [sic] me.
BY THE COURT: '
Okay. All right.
BY DEFENDANT MCCORVEY:
I got her. She going [sic] to help me through it.
|10BY MS. SALLAH:
Your Honor, as co-counsel, Your Honor, I’m asking again for a defense continuance. . ,
BY THE COURT:
I appreciate—
BY MS. SALLAH: ,
Mr. McCorvey is looking at serious time.
Mr, ■ McCorvey, as well as myself, we need time to prepare for trial. Your Honor, I’m just asking for a brief continuance. on behalf of Mr. McCorvey, and Mr. McCorvey has already asked for it as well.
BY THE COURT:
Denied. Opening Statements.
However, the State argues that a Faret-ta colloquy was not required in the present case .and relies, on State v. Stanfield, 2013-1193 (La.App. 4 Cir. 3/26/14), 137 So.3d 788, to support this contention. • In Stanfield, the defendant asserted his right to self-representation on a motion to quash in March 2013. At the hearing on the motion, his attorney also referred to herself as the defendant’s co-counsel. At the multiple offender hearing in April 2013, the trial court noted the defendant was proceeding pro se but had “appointed counsel for the purposes of assistance as needed.” Id. at p, 12, 137 So.3d at 796. The Court found that because the attorney actively participated.in the defense of the defendant “through to his sentencing as a multiple offender,” .the defendant had elected a hybrid form of representation: The Stanfield Court found.that although there was nothing in. the record that showed that the trial court ever conducted a Faretta colloquy to advise the defendant of the “dangers and disadvantages of hybrid representation” or that the defendant “personally and expressly” waived “his right-to full representation,” based on the. facts and circumstance of-the case, the trial court did not .abuse its discretion in fallowing the defendant to represent him *48 self. Id. at p. 12-13,137 So.3d at 796-797. This Court noted in Stanfield that the trial court could have determined that based upon the defendant’s background, experience, and conduct, he intelligently waived his right to counsel and “[njothing in the record evidences that the defendant was not exercising his informed free will.” Id. at p. 13,137 So.3d at 797.
In the present case, the record shows that Ms. Sallah considered herself defendant’s co-counsel. Moreover, although defendant initially stated prior to trial that he did not “have an attorney present,” he later recognized that he had Ms. Sallah to help him through the trial. Ms. Sallah did not question the witnesses at trial; defendant conducted the cross-examinations. Howevér, Ms. Sallah moved for a continuance on behalf of the defense prior to trial and made multiple remarks during trial that suggests she was involved in the defense and not merely acting as standby counsel. -Ms. Sallah made several objections to trial testimony, most of which were sustained by the trial court. Ms. Sallah conferred with défen-dant during the cross-examination of a witness concerning the contents of the police report. (“BY DEFENDANT MCCOR-VEY: Can I get a minute, Judge, for a second, if you don’t mind— BY MS. SALLAH: We need a second, Your Hon- or.”) Further, Ms. Sallah clarified a question submitted by defendant (“BY MS. SALLAH: For the record Mr. McCorvey is talking about State’s Exhibit [3]”). Additionally, Ms. Sallah moved for post-judgment verdict of acquittal after trial; moved for a motion for reconsideration of sentence during his sentencing hearing; and moved to quash the multiple bill of infor-’ mation. At the multiple offender hearing, Ms. Sallah conducted a cross-examination; made multiple objections; and attempted to refute the State’s evidence of defendant’s prior felonies. The record shows that Ms. Sallah’s involvement in the case spanned approximately one year. | ^Therefore, although defendant questioned the witnesses during trial, and thus performed some functions of an attorney, it appears that Ms. Sallah retained control of the case because she actively participated in- the defense of defendant from trial through the multiple offender hearing. Accordingly, similar to Stanfield, it is evident that defendant opted for hybrid representation.
It is important to note here that defendant filed two pro se motions and appeared before the trial court on numerous occasions. The same trial judge presided over the entire case and was able to observe defendant throughout the proceedings, including the competency hearing. The trial court was therefore aware of defendant’s educational and literacy, level. Before .commencing trial, the court noted that defendant had indicated that he was going to act as “lead counsel.” As noted earlier, defendant also acknowledged that Ms. Sal-lah was going to assist him during trial.
The trial transcript indicates that defendant understood the nature of the charges against him. Furthermore, the record shows that defendant was aware that he faced twenty years to life if convicted. In addition, defendant had three prior convictions; thus, it was not his first encounter with the ■ criminal justice system. See State v. Hayes, 2011-1232, p. 6 (La.App. 4 Cir. 10/24/12), 107 So.3d 668, 673 (noting that the defendant’s prior criminal history and familiarity with the criminal justice system should be considered in determining whether the defendant understands the waiver of the right to counsel under the totality of the circumstances).
Based on the foregoing, and the totality of the circumstances, it is evident that defendant was capable of making the *49 choice of self-representation knowingly and voluntarily.- Thus, we find defendant has not established that the trial court 11sabused its discretion in permitting defendant to represent himself during'triál with the assistance of Ms. Sallah as co-counsel. Defendant’s assignment’ of error ‘lacks merit.
DECREE
For the foregoing reasons, we affirm defendant’s conviction and sentence.
CONVICTION AND SENTENCE, AFFIRMED

. Ms. Sallah conducted cross-examination at the multiple bill hearing and objected to the sentence imposed by the trial court.

.In Dorthey, 623 So.2d at 1280-1281, the Louisiana Supreme Court held that the courts have the power to declare minimum’ sentences required by the Habitual Offender Law unconstitutional, and the trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment” or is nothing more than "the purposeful imposition of pain and suffering” and "is grossly out of proportion to the severity of the crime.”

. The Econo Lodge issued defendant two receipts: one from the day defendant checked in, and the other for the extended stay. Although the second receipt indicated that defendant was assigned to Room 205, the Econo Lodge management scratched out Room 205 and wrote in Room 111 because it did not make defendant change rooms upon the extension of his stay.

. Det. Palumbo admitted that he did not directly observe defendant selling crack, and the information was obtained through Sgt. Sislo's surveillance.

. The State stipulated that if Corey Hall, an expert in the field of analyzing and identifying controlled dangerous substances, .were called to testify, he would state that the rock like substance found in the hotel room testified positive for cocaine, and the vegetable matter found on defendant testified positive for marijuana. The defense did not object to this stipulation.

. La. R.S. 15:301.1(A) provides:
When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.