EDWIN A. LOMBARD, Judge.
_jjThe Appellant, defendant Ronald Stan-field, seeks a review of the record for errors patent and reversal of his adjudication as a multiple offender and sentence of eight years at hard labor. For the reasons that follow, we affirm his adjudication and sentence. Furthermore, we grant appellate counsel’s motion to withdraw.
FACTS AND PROCEDURAL HISTORY
The defendant was convicted of simple burglary, a violation of La.Rev.Stat. 14:62 and was sentenced to ten years at hard labor, with credit for time served. Stan-field later filed a motion for post-verdict judgment of acquittal and a motion to reconsider sentence, both of which were denied. Stanfield appealed and this Court affirmed his conviction and sentence on appeal. State v. Stanfield, 10-0854 (La.App. 4 Cir. 1/19/11), 56 So.3d 428. He applied for writ of certiorari in the Supreme Court, which denied the writ. State v. Stanfield, 11-0266 (La.6/3/11), 63 So.3d *791 1007. The defendant also filed a pro se post-conviction motion to quash and application for post-conviction relief, which were denied by the trial court.
Pursuant to La.Rev.Stat. 15:529.2, the State charged the defendant as a multiple offender based upon a 2007 felony conviction for forgery.[1] The trial court found him to be a multiple offender and, at a May 21, 2013 hearing, vacated his ten li>year sentence and sentenced him to eight years at hard labor with credit for time served. The Louisiana Appellate Project, on behalf of Stanfield, filed a motion for appeal and, subsequently, an appellate brief seeking this Court’s review of the case for errors patent. Stanfield later timely filed a supplemental pro se brief asserting five (5) assignments of error:
(1) the trial court abused its discretion by allowing inadmissible evidence to be used to convict defendant at multiple offender proceedings;
(2) the trial court erred where it denied defendant’s motion to quash multiple offender bill of information where the State untimely filed the information (3) years after original sentence and (120) days before parole release;
(3) the trial court erred in finding the State proved defendant was one in the same convicted of prior felony;
(4) the trial court erred in failing to properly warn defendant of the relinquishment of his Sixth amendment right to self-representation and failed to administer to defendant a Faretta hearing; and
(5) the trial court erred in finding that the State proved defendant is a Habitual Offender.

ERRORS PATENT

The Louisiana Appellate Project, on behalf of Stanfield, seeks this Court’s review of the record for errors patent on the multiple offender adjudication and sentence only.[2] Additionally, the Louisiana Appellant Project seeks the right to withdraw as counsel of record.
|SA sole error patent was revealed upon our review of the record regarding Stan-field’s multiple offender sentence. At the sentencing hearing on May 21, 2013, the trial court vacated the Stanfield’s prior sentence and imposed a sentence of “eight years in the Department of Corrections as a double offender”. The trial court, however, failed to state that the sentence was to be without probation or suspension of sentence as per La.Rev.Stat. 15.529.1(G). Nevertheless, pursuant to State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with the restriction of benefits, even in the absence of the trial court minute entry showing the restrictions. Thus, there is no need for our Court to correct the sentence.
Moreover, considering that the brief filed by the Louisiana Appellate Project is procedurally complete and compliant with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, we grant the motion to withdraw.
ASSIGNMENT OF ERROR ONE
In his first pro se assignment of error, Stanfield argues that the trial court erred in allowing inadmissible evidence, his fingerprints, to be used to convict him as a multiple offender over his objection. He *792 maintains that at the multiple bill hearing he was compelled by the trial court to submit his fingerprints against his will in violation of his Fifth Amendment rights. He further relies on La.Rev.Stat. 15:29.1(F)[3] in support of his argument that he . has a right to refuse fingerprinting.
Lin support of his argument that the trial court violated his Fifth Amendment rights, Stanfield relies upon Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In Davis, the defendant, John Davis, was convicted of rape and sentenced to life imprisonment. His conviction and sentence were affirmed on appeal. On writs of certiorari, the Supreme Court reversed the appellate ruling, finding that fingerprints taken from Davis at the time of his first detention were illegally obtained. As in Davis, Stanfield argues that the fingerprints taken at his multiple bill hearing should have been excluded from evidence because they were illegally obtained. He further argues that pursuant to Mapp, his fingerprints are inadmissible because the Supreme Court reasoned that all evidence obtained by searches and seizures in violation of the Constitution are inadmissible.
Stanfield maintains that because of the illegally obtained fingerprints, the trial court erred in denying his motion to reconsider sentence and also failed to take into account his time served, his rehabilitation, and other “mitigating factors”.
The record reflects that Stanfield’s fingerprints were taken by New Orleans Police Department Officer Jay Jacquet on the date of the multiple bill hearing and Officer Jacquet testified at the hearing. Stanfield objected to his fingerprints being |,.¡taken at the hearing arguing it was a violation of his rights under the 4th, 5th and 14th Amendments.
Nevertheless, it has been long determined by the Louisiana Supreme Court that it .is not a violation of one’s Fifth Amendment privilege against self-incrimination to take the accused’s fingerprints in court. State v. Woodard, 387 So.2d 1066, 1070 (La.1980) citing, State v. House, 320 So.2d 181 (La.1975).[4] Furthermore, La. Rev.Stat. 15:39.1(F) does not support Stan-field’s fingerprinting argument. Thus, we find that the trial court did not err in obtaining Stanfield’s fingerprints at court for use in the multiple bill hearing. This assignment of error is without merit.
ASSIGNMENT OF ERROR TWO
In his second assignment of error, Stanfield argues that the trial court erred *793 in denying his motion to quash the multiple offender bill when the State erroneously filed the bill of information three years after the original sentence and one hundred twenty days prior to his parole release.
According to Stanfield, the State was aware of his 2007 conviction, and it waited an unreasonable amount of time to file the multiple bill. Specifically, Stanfield argues that he was sentenced on March 4, 2010; however, the bill of information was accepted on January 10, 2013. He argues that the State unreasonably delayed the sentencing. He asserts that the court must consider:
1. the length of the delay, which Stan-field contends was three years after the original sentencing;
|fi2. the reason for the delay, which Stanfield claims the State failed to provide;
3. his right to a speedy trial, which Stanfield claims he requested;
4. the prejudice to Stanfield, who maintains that he anticipated being released after serving forty percent of his time; and
5. what party requested the delay, which Stanfield argues was the State, who sought twenty-six continuances.
Stanfield relies on La.Rev.Stat. 15:529.1(D)(l)(a)[5] to support his argument that his motion to quash should have been granted. In State v. Grimes,, 01-0576, p. 5 (La.App. 4 Cir. 5/2/01), 786 So.2d 876, 879-80, we explained the intent of said statute, also referred to as the multiple offender statute:
The multiple offender statute, La. R.S. 15:529.1, does not provide a time period in which a multiple bill should be filed and the matter adjudicated except to note that a defendant may be charged as a multiple offender if “at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted” of another felony. State v. Walker, 98-1410 (La.App. 4 Cir. 5/12/99), 735 So.2d 837. In State v. Broussard, 416 So.2d 109, 110 (La.1982), the Louisiana Supreme Court noted that although La. R.S. 15:529.1 [7does not provide a time limitation, a multiple bill must be filed within a reasonable time after the State learns that a defendant has a prior felony conviction. The Court stated:
The same considerations which underlie the constitutional right to a speedy trial compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the *794 verdict within a reasonable time. Since the enhancement of penalty provision is incidental to the latest conviction, the proceeding to sentence under the provision should not be unduly delayed. Citations omitted.
The record reveals that Stanfield was convicted on February 1, 2010, and sentenced on March 4, 2010. While Stanfield appealed his conviction and sentence to this Court, the State filed a multiple bill on April 30, 2010, less than thirty days post sentencing. The record also reflects that the hearing on the multiple bill was not until April 19, 2013. Stanfield could have been charged as a multiple offender any time after his conviction and sentence within a reasonable time. The record further reveals that between February 2010 and April 2013, Stanfield failed to be transported to court over five times causing the multiple bill hearing to be continued, a delay that neither party can be responsible for. Although there was a delay in the hearing, the State was timely in filing the multiple bill, and the district court did not unreasonably delay the hearing. Therefore, we find that the multiple bill was filed within a reasonable time following Stan-field’s March 4, 2010 sentence. This assignment of error is without merit.
ASSIGNMENT OF ERROR 3
In his third assignment of error, Stanfield argues that the trial court erred in finding that the State proved he was the same person convicted of the 2007 felony, in Case Number 456-066, stemming from a crime committed in 2004.
IsStanfield maintains that the State was allowed to rely on expert testimony at the multiple bill hearing to testify in regards to fingerprints. According to Stanfield, the expert, Officer Jacquet, was unable to match the fingerprints taken at trial with those on the back of the bill of information from the 2004 crime. Moreover, the State’s evidence only proved that Stanfield was arrested for the alleged offense, not convicted.
Stanfield argues that there is no prima facie proof that he committed the 2004 crime. He relies upon State v. Nguyen, 04-321 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, wherein the Fifth Circuit vacated the defendant’s conviction as a multiple offender where the record did not reflect that: 1.) the trial court held a multiple offender hearing; 2.) the State did not offer any evidence to prove the allegations in the bill of information; and 3.) the defendant did not admit to the allegations contained in the bill of information. Id. at pp. 19-20, 888 So.2d at 912. However, Stanfield’s reliance on Nguyen is misplaced because, unlike Nguyen, Stanfield had a multiple bill hearing.
To obtain a habitual offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Payton, 00-2899, p. 6 (La.3/15/02), 810 So.2d 1127, 1130, citing State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39. The court in Payton explained that in attempting to establish identity, the State may present:
(1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical drivers license number, sex, race and date of birth. [Emphasis added.]
|c)M at p. 6, 810 So.2d at 1130-31. Thus, matching the fingerprints on the bill of information from the initial crime is not required for the State to prove that a defendant charged as a habitual offender is the same person previously convicted. *795 Fingerprints are not absolutely required to prove identity, if other requirements under Payton can be met.
The record reflects that at the multiple bill hearing on April 19, 2013, Officer Jac-quet testified that he is a latent print examiner, and the trial court accepted him as an expert in the area of fingerprinting, analysis and identification. He testified that he had taken Stanfield’s fingerprints that day in court in an attempt to match the fingerprint card with the fingerprints contained in a 2004 arrest folder, which contained a photo of Stanfield. Officer Jacquet explained that the fingerprints in the 2004 arrest folder were too dark to compare with the fingerprints taken in court that day; however, he was able to match up other information and conclude that Stanfield was the same person in the arrest folder from 2004.
The State introduced various documents relative to Stanfield through the testimony Officer Jacquet. The State offered into evidence two sets of fingerprints: one set from the 2004 arrest folder and the set taken from Stanfield that day in court. The State also offered a Cert Packet from Stanfield’s 2007 conviction. Officer Jac-quet confirmed that the Cert Packet contained a certified a bill of information, a Boykin form, a case number, an arrest register, a folder number. He further testified that he compared the folder numbers and State Identification Numbers (SIN) from the 2004 crime to those of the 2007 conviction and the respective numbers matched from those two exhibits.
_LmThe State established that the evidence linked Stanfield to the 2004 arrest despite Officer Jacquet’s inability to match the fingerprints. Viewing all of the evidence in a light most favorable to the prosecution, we find that the State proved Stanfield was the same person who committed the 2004 crime and was subsequently convicted. Thus, the trial court properly found Stanfield was a second-felony habitual offender, and this assignment of error is without merit.
ASSIGNMENT OF ERROR 4
In his fourth assignment of error, Stanfield argues that the district court violated his Sixth Amendment right to self-representation by failing to administer a Faretta hearing thereby informing him that he was relinquishing his right to counsel and if he understood the consequences of relinquishment.
In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), “the Supreme Court recognized a defendant’s Sixth Amendment right to conduct his own defense by making a knowing and voluntary waiver of his right to counsel and thereby asserting his right to represent himself.” State v. Mathieu, 10-2421, p. 6 (La.7/1/11), 68 So.3d 1015,1018.
The Louisiana Supreme Court held that while there is substantial authority that supports that a trial court must conduct an adequate Faretta colloquy when a defendant “elects hybrid representation” there is contrary authority that supports the position that a formal colloquy and an express waiver is not required where a defendant understands the action he or she is taking. Mathieu at pp. 9-10, 68 So.3d at 1020. Moreover, the Supreme Court further noted, pursuant to People v. Jones, 53 Cal.3d 1115, 282 Cal.Rptr. 465, 811 P.2d 757, 773 (1991), that where a defendant chooses a limited role as co-counsel, the defendant has not waived the right to counsel:
Inlf ... a defendant chooses to be represented by counsel and the trial court allows the defendant a limited role as cocounsel, the defendant has not waived the right to counsel. The defense attorney retains control over the case and *796 can prevent the defendant from taking actions that may seriously- harm the defense. In that situation, the trial court may, but need not, warn the defendant of the problems of being cocounsel [sic].
Mathieu at pp. 9-10 (La.7/1/11), 68 So.3d 1015,1020.
“Generally, a defendant represented by counsel is bound by the motions and strategic decisions filed by counsel.” State v. Carter, 10-0614, p. 23 (La.1/24/12), 84 So.3d 499, 519 [citations omitted]. However, “[w]hile an indigent defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative.” Id. at p. 24, 68 So.3d at 1019, citing State v. Brown, 03-0897, pp. 28-31 (La.4/12/05), 907 So.2d 1, 21-24 (quoting State v. Bodley, 394 So.2d 584, 593 (La.1981)). Nevertheless, a trial court has the discretion to allow a defendant to act as his own co-counsel. Mathieu at p. 7, 68 So.3d at 1019.
To the extent that hybrid representation in which defendant and counsel “act, in effect, as co-counsel, with each speaking for the defense during different phases of the trial,” results partially in pro se representation, “allowing it without a proper Faretta inquiry can create constitutional difficulties.” Carter, 10-0614, p. 25 (La.1/24/12), 84 So.3d 499, 520, citing Mathieu at p. 8, 68 So.3d at 1020 (quoting 3 LaFave, Criminal Procedure, § 11.5(g), pp. 765-67).
The Supreme Court has further explained what trial courts must consider when a defendant asserts the right to self-representation:
Should a defendant wish to waive counsel and represent himself, “[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances | ^surrounding that case, including the background, experience, and conduct of the accused.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ... Further, a defendant must be made aware of the dangers and disadvantages of self-representation so that the record demonstrates that “ ‘he knows what he is doing and his choice is made with his eyes open.’” Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). A defendant, in other words, must know the consequences of his action. City of Monroe v. Wyrick, 393 So.2d 1273, 1275 (La.1981). The assertion of the right must also be clear and unequivocal. See Faretta, 422 U.S. at 835, 95 S.Ct. at 2541;. see also State v. Hegwood, 345 So.2d 1179, 1181-82 (La.1977).
Carter, 10-0614, p. 25 (La.1/24/12), 84 So.3d 499, 520.
The record in the instant matter reflects that Stanfield asserted his right of self-representation for the first time at the March 1, 2013 hearing on his motion to quash. At the April 19, 2013 multiple offender hearing, the trial court noted that Stanfield was “proceeding pro se ” but had “appointed counsel for the purposes of assistance as needed.” The record further reflects that both Stanfield was an active participant in his defense with his co-counsel, Joyce Salah, through to his sentencing as a multiple offender. Indeed, Ms. Salah, was present at the March 1, 2013 hearing where the trial court denied Stanfield’s motion to quash, and she advised the court then that “Mr. Stanfield is representing himself. I am Co-Counsel.” However, the transcripts reflect that Stanfield elected a hybrid form representation where Ms. Salah substantially participated in Stan-field’s defense.
*797 Nothing in the record reflects that the trial court ever conducted a Faretta colloquy to advise Stanfield of the “dangers and disadvantages of hybrid representation” nor does the record reflect that Stanfield “personally and expressly” waived “his right to full representation.” Mathieu at p. 10, 68 So.3d at |1S1019. Nevertheless, Stanfield has not established that the trial court abused its discretion in allowing him to represent himself. Based upon the facts and circumstances of this case, the trial court could have determined that based upon Stanfield’s background, experience, and conduct, that he intelligently waived his right to counsel. Nothing in the record evidences that the defendant was not exercising his informed free will. Moreover, the record reflects that he, in fact, elected a hybrid form of representation and had counsel actively participating in his defense at his multiple bill hearing and sentencing. Therefore, we find that this assignment of error is without merit.
ASSIGNMENT OF ERROR FIVE
In his fifth pro se assignment of error, Stanfield argues that the trial court erred in finding that the State proved that he is a habitual offender. He argues that the State introduced into evidence a “packet” containing forms that do not reveal that he knowingly, intelligently and voluntarily waived his constitutional rights and that the State should not have been allowed to introduce a transcript wherein he pleaded guilty to another crime.
To prove that a defendant is a multiple offender, the State must establish by competent evidence that there is a prior felony and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982). Where the prior conviction resulted from a plea of guilty, the state must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to this plea of guilty, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
_Jj40ur Court has noted that Louisiana Supreme Court adopted a scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769 (La.1993):
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a ‘perfect’ transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an ‘imperfect’ transcript. If anything less than a ‘perfect’ transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary.
State v. Causey, 10-1466, p. 4 (La.App. 4 Cir. 6/16/11), 67 So.3d 697, 700-01, citing State v. Conrad, 94-232, pp. 3-4 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062, 1064.
At the March 1, 2013 hearing on Stan-field’s motion to quash the Stanfield was given copies of the Cert Packet. At the April 19, 2013 multiple bill hearing, the State offered as exhibit three a Cert Pack *798 et, which contained: the bill of information, a Boykin form, an arrest register, a folder number, and a State ID. number. The Boykin form, which Stanfield initialed and signed, reflects that Stanfield was represented by counsel when he entered his guilty plea. It further evidences that he was advised of his rights, chose to waive his rights and pleaded guilty. Additionally, Officer Jacquet qualified as an expert and concluded that there was enough evidence to find that Stanfield was a multiple offender. Based |1fiupon the record, we find that the State met its burden of proof and Stanfield failed to rebut the evidence. This assignment of error is without merit.
DECREE
For the foregoing reasons, we affirm the multiple offender adjudication and sentence of Ronald Stanfield. Additionally, the Louisiana Appellate Project is allowed to withdraw as counsel of record.
AFFIRMED; MOTION GRANTED.

. Stanfield pleaded guilty to the forgery charge.

. We initially addressed errors patent as to Stanfield’s conviction and original sentence in Stanfield, supra.

. La.Rev.Stat. 15:529.1(F) provides:
The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.

. See also La. Prac. Crim. Trial Prac. § 20:42 (4th ed.), "[a]n accused may be required to submit to fingerprinting in court before the jury, without that being violative of his Fifth Amendment privilege against self-incrimination (the exposure of his physical characteristics is considered nontestimonial).”

. La.Rev.Stat. 15:529.1(D)(1)(a) states:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b) of this Paragraph. The judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies as set forth in the information.