NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-384

STATE OF LOUISIANA

VERSUS

COLBY JAMES KINSEY

A/K/A COLBY J. KINSEY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 17-493
HONORABLE GREGORY P. AUCOIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED.**

**Hon. M. Bofill Duhe**
**District Attorney**
**W. Claire Howington**
**Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Edward K. Bauman**
**Louisana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Colby James Kinsey**

**SAVOIE, Judge.**

Defendant, Colby J. Kinsey, was charged by bill of information with aggravated second degree battery, a violation of La.R.S. 14:34.7; domestic abuse battery, first offense, a violation of La.R.S. 14:35.3(C) and (L); second degree battery, a violation of La.R.S. 14:34.1; and aggravated battery, a violation of La.R.S. 14:34. A unanimous jury of twelve convicted Defendant of each charged offense. The trial court imposed consecutive sentences for each offense, but then it vacated those sentences after adjudicating Defendant a second felony habitual offender. Defendant was sentenced as a habitual offender to serve consecutive sentences of fifteen years at hard labor for aggravated second degree battery, two years at hard labor for domestic abuse battery, six years at hard labor for second degree battery, and seven years at hard labor for aggravated battery. Defendant is before this court appealing his convictions and his adjudication as a habitual offender.

## FACTS

On February 24, 2017, Defendant punched his girlfriend, Angela Olds, in the face to the point of unconsciousness after a heated argument between them. He then proceeded to strangle her, break the tip of her nose, and beat her with a PVC pipe on her legs and arm. The following day, he hit her across the back with a broom stick, hit her on the head with a brass lock, put a lit cigarette on her stomach and throat, and hit her feet with a wooden shovel. Ms. Olds left home and sought help when Defendant and his mother left the house.[1]

---

[1] Defendant and Ms. Olds lived in a trailer behind the mother's house.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we conclude that there are no errors patent.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, Defendant contends the trial court erred in allowing the State to display a Power Point presentation describing the cycle of domestic violence to the jury during voir dire without prior notice to Defendant or to the trial court. In response, the State argues that the Power Point presentation was used as a demonstrative aid and was described in the prosecutor's discussion at the time it was shown. Additionally, the State notes that the slide was immediately visible to the trial court, which allowed it to review the content. Even assuming it was error to permit the jury venire to view the Power Point presentation, the State contends any error was harmless.

We note that the context in which this issue arose is important in determining the propriety of the ruling. As indicated, this case involves allegations of actual domestic violence. Further, pursuant to a previous *Prieur*[2] hearing on other crimes evidence as per La.Code Evid. art. 404(B), the jury was to hear evidence of prior acts of domestic violence perpetrated by Defendant.

During voir dire, the following exchange occurred involving a discussion of domestic violence:

THE COURT:

---

[2] *State v. Prieur*, 277 So.2d 126 (La.1973)

Is there any reason at all that comes to mind that would prevent any one of you from giving both sides in this case a fair trial? Miss Gregory?

JUROR GREGORY:

Yeah, I've been involved in domestic violence. I don't think I could be fair and impartial.

THE COURT:

Okay. All right. Now the attorneys --

MR. LEGROS[3]:

Whoa.

THE COURT REPORTER:

Judge, there's another lady with her hand up.

THE COURT:

I'm sorry. Yes, ma'am?

JUROR MYERS:

I don't think a man should never hit a woman no matter for what reason, you know.

THE COURT:

Okay. Well, that's what the law says. That's exactly what the law says. Okay?

JUROR MYERS:

Okay.

THE COURT:

Okay. The attorneys are going to ask y'all some questions.

Later, the State questioned the prospective jurors about their experiences with domestic violence and whether they had family members who had been

---

[3] Mr. Legros was counsel for Defendant.

victims of such violence.  The following objection took place during a portion of that questioning:

MS. CHARRIER[4]:

I remember that case.  I wasn't the prosecutor on it, but that was a very serious case.  And so, that really rose to another level in that case because she was actually –

MR. LEGROS:

Objection, Your Honor.  May we approach?

THE COURT:

Yep.
(BENCH  CONFERENCE)

MR. LEGROS:

Basically she's just inflating the jury with that.  I mean, she's already established the fact that she was the victim of domestic violence.  I think we can move on.  We don't need to hear how serious the other case was.

THE COURT:

Denied.  Denied.

Another prospective juror was then questioned about a family member who had died as a result of domestic violence in another state, and then the Power Point presentation on the cycle of domestic violence was presented on the cycle of domestic violence was presented to the prospective jurors after the following colloquy.

MS. CHARRIER:

I want to show you guys this.  This is the cycle of domestic violence.  And I'm sorry if I'm blocking the view for some of you.

MR. WILLIAMS[5]:

---

[4] Ms. Charrier was the prosecutor for the State.
[5] Mr. Williams was counsel for Defendant.

Your Honor, I'm going to object. Can we approach the bench?

THE COURT:

Yes.

MR. LEGROS:

Turn that off. (Indicating to projector screen).

(BENCH CONFERENCE)

THE COURT:

This is voir dire. She's not introducing any evidence related to this case.

MR. LEGROS:

She's informing the jury. We don't need to know about the cycle of domestic violence. This has nothing to do with this case and all it's doing is inflaming the jury.

MR. WILLIAMS:

Your Honor, that's exactly what it is.

MS. CHARRIER:

Judge, I'm trying to show the cycle of domestic violence and the patterns (inaudible)

THE COURT:

I agree. The objection is overruled.

MR. WILLIAMS:

Judge, just briefly. This is a classic example of inflaming the jury sense of validation. Same thing with the war or drugs and how many people are killed. This has no place in this trial a cycle of domestic violence. That's not what we're here for today.

(BENCH CONFERENCE ENDS)

While referring to what was being shown on the screen, the prosecutor stated

as follows:

5

This is what we call the cycle of domestic violence and this is just kind of to education (sic) you guys a little bit about domestic violence. If you don't work a field where we're dealing with this kind of stuff every day, sometimes we don't know exactly the patterns.

So I'll start here on the right with the tension phase. So as you can see this feels like walking on egg shells. Nothing is right. No way to predict what the accuser wants. Or they may not be physical[ly] violen[t] or at least physical violence is minimal. There is emotional abuse, intimidation, threats, fear of violence is often as worst as violence itself. So that's tension building.

Then we have the actual violent act. This is the actual violent episode. It includes physical, emotional or sexual abuse and a crime is committed. Okay.

Then after the violence happens we go into what's called "the honeymoon phase". Abusers act differently after violent episodes. Some ignore or deny the violence. Some blame their anger on something that the victim said or did. Some fear losing the victim and act genuinely sorry. This phase is often called "the honeymoon phase". The abuser will try to make up for his violence, may act sorry, send cards, buy flowers, buy presents, help around the house, spend time with his kids, go to church, get counseling or make promises and may seek pity. It's important to realize this phase is an attempt to draw the victim back in and is never a real honeymoon.

So as the cycle is repeated it takes less time, once a cycle is complete, to repeat the cycle. Okay. So the first cycle ma[y] take awhile to complete, but as it's completed the next one is not going to take as long to complete. So we have the tension building, the violent act and the honeymoon phase where things seem to be going good, getting better and then it goes up again and we have the violent act.

Does anybody have any questions?

(No affirmative response.)

Louisiana Code of Criminal Procedure Article 786 provides that "[t]he court, the state, and the defendant shall have the right to examine prospective jurors" and the scope thereof "shall be within the discretion of the court."

La. Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La.Code Crim.P. art. 786 further provides that the court, the state and the defendant shall have the right to examine prospective jurors and the scope of the examination shall

6

be within the discretion of the court. The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. However, although the trial judge is vested with discretion to limit the voir dire examination, he must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused's right to full voir dire of prospective jurors embodied in La. Const. art. 1, § 17. In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken only on the record of the voir dire examination as a whole. *State v. Williams,* 457 So.2d 610 (La.1984); *State v. Jackson,* 358 So.2d 1263 (La.1978).

*State v. Hall*, 616 So.2d 664, 668-69 (La.1993).

Based on the showing in this case, we find no abuse of the discretion on the part of the trial court. While Defendant objected to the State presenting the Power Point presentation to the prospective jurors, no effort was made to preserve the Power Point presentation by way of a proffer. Accordingly, we are unable to review the content thereof and cannot make an independent determination of its probative or prejudicial effect thereof. Accordingly, we are left to review the issue based on a determination of whether the trial court abused its great discretion on the record before us. That being the case, we cannot find that it did.

Further, even if the Power Point presentation was improperly displayed during the voir dire process, we conclude that it was harmless error under the circumstances as there is no showing of prejudice. There was evidence that the victim here was indeed the victim of domestic violence and that it had occurred previously. That was the purpose of the La.Code Crim.P. art 404(B) *Prieur* hearing and the introduction of the evidence of the prior domestic violence incidents.

7

In addition, in a case involving voir dire rulings by a trial court regarding *Batson* challenges[6], the supreme court stated as follows:

> The trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. *State v. Myers*, 99-803, p. 6 (La.4/11/00), 761 So.2d 498, 502. As a result, the trial court's evaluation of discriminatory intent is entitled to great deference by reviewing courts. *Hernandez* [*v. New York*]*,* 500 U.S. [352,] 364, 111 S.Ct. 1859, 114 L.Ed.2d 395; [*State v.*] *Hobley,* 98-2460 at 20 [(La. 12/15/99)], 752 So.2d [771,] 783.

*State v. Juniors*, 03-2425, p. 32 (La. 6/29/05), 915 So.2d 291, 319, *cert. denied,* 547 U.S. 1115, 126 S.Ct. 1940 (2006).

While the issue in the case before us involves the intent of the prosecutor in determining potential jurors' ideas and prior experiences with domestic violence, as opposed to the trial court's determinations of the intent of the prosecutor in selecting potential jurors based on race, the rational in *Juniors* is the same. It is the trial court who is in the best position to determine intent, and its decision is entitled to great deference.

Therefore, we conclude that, under the circumstances, the trial court did not err in allowing the Power Point presentation at issue, and even if such allowance was in error, the same was harmless based on the circumstances here and the lack of evidence showing the content of the presentation for this court to review.

**ASSIGNMENT OF ERROR NO. 2:**

In this assignment of error, Defendant contends the trial court erred in denying several of his challenges for cause of prospective jurors. Louisiana Code of Criminal Procedure Article 797 provides in pertinent part:

---

[6] *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 (1986).

8

The state or the defendant may challenge a juror for cause on the ground that:

. . . .

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court[.]

In *State v. Dotson*, 16-473, pp. 3-18 (La. 10/18/17), 234 So.3d 34, 38-45 (footnotes omitted), the supreme court discussed the law applicable to review of the trial court's denial of challenges for cause:

Louisiana Constitution article I, section 17 guarantees a defendant the "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." **State v. Juniors**, 03-2425, p. 7 (La. 6/29/05), 915 So.2d 291, 304. The number of peremptory challenges granted to a defendant in a trial of an offense punishable necessarily by imprisonment at hard labor, such as the one currently before this court, is fixed by law at twelve. See La. Const. art. I, § 17(A); La. C.Cr.P. art. 799. When a defendant uses all twelve of his peremptory challenges, an erroneous ruling by a trial court on a challenge for cause that results in depriving the defendant of a peremptory challenge constitutes a substantial violation of the defendant's constitutional and statutory rights, requiring reversal of the conviction and sentence. **Juniors**, 03-2425 at 7-8, 915 So.2d at 304; see La. C.Cr.P. art. 921 ("A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."). Therefore, prejudice is presumed when a challenge for cause has been erroneously denied by a trial court and the defendant exhausts all peremptory challenges statutorily afforded to the defendant. **Juniors**, 03-2425 at 8, 915 So.2d at 305 (citing **State v. Robertson**, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280, and **State v. Ross**, 623 So.2d 643, 644 (La. 1993)). In summary, where all peremptory challenges have been used, as in this case, a defendant

need only demonstrate the erroneous denial of a challenge for cause to establish reversible error warranting reversal of a conviction and sentence. See **Juniors**, 03-2425 at 8, 915 So.2d at 305.

A defendant may challenge a juror for cause if "[t]he juror is not impartial, whatever the cause of his partiality." La. C.Cr.P. art. 797(2). Additionally, La. C.Cr.P. art. 797(3) provides a defendant may challenge a juror for cause on the ground that "[t]he relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." A "juror [who] will not accept the law as given to him by the court" may also be challenged for cause by the defendant. See La. C.Cr.P. art. 797(4).

*Voir dire* examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. **State v. Drew**, 360 So.2d 500, 513 (La. 1978). The questions propounded are designed to determine any potential adverse influence on the prospective juror's ability to render an impartial verdict. See *id*. A prospective juror's responses during *voir dire* cannot be considered in isolation. See **State v. Frost**, 97-1771, p. 8 (La. 12/1/98), 727 So.2d 417, 426.

A trial judge is vested with broad discretion in ruling on challenges for cause, and such a ruling is subject to reversal only when a review of the entire *voir dire* reveals the judge abused his discretion. **Robertson**, 630 So.2d at 1281. The trial judge's refusal to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the prospective juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. *Id*.

. . . .

Defendant's challenge for cause as to K.C. was related to the following facts: (1) K.C.'s mother was raped and murdered; and (2) K.C. testified that her mother's ordeal might affect her impartiality in this case. Because the basis for defendant's challenge does not involve a relationship described in La. C.Cr.P. art. 797(3) (quoted *supra*), the ground at issue in this case is La. C.Cr.P. art. 797(2) (quoted *supra*).

. . . .

"[T]he fact that a juror may have painful memories associated with the subject of a criminal trial is not listed as a basis for a challenge for cause under La.C.Cr.P. art. 797." **State v. Magee**, 13-

10

1018, p. 12 (La.App. 5 Cir. 9/24/14), 150 So.3d 446, 454, writ denied, 14-2209 (La. 10/2/15), 178 So.3d 581. That a prospective juror personally has been the victim of a crime will not necessarily preclude that prospective juror from serving on a jury. **State v. Dorsey**, 10-0216, p. 3 (La. 9/7/11), 74 So.3d 603, 631. A prospective juror's relationship to a person who was the victim of a crime likewise does not disqualify a prospective juror from serving. See *id.*; **State v. Nix**, 327 So.2d 301, 326 (La. 1975) (a prospective juror's relationship to a murder victim–his brother-in-law–was insufficient to establish cause for excusing the venireman).

The law does not require that a jury be composed of individuals who have not personally been a crime victim or who do not have close friends or relatives who have been crime victims. It requires that jurors be fair and unbiased. **Juniors**, 03-2425 at 11, 915 So.2d at 306. Therefore, the prospective juror's past experience as, or relationship to, a victim of a crime similar to that for which the defendant is being tried must be examined in conjunction with other evidence in the record of the *voir dire* proceeding that bears on the prospective juror's ability to be fair and impartial and to apply the law as instructed by the trial court. See **Dorsey**, 10-0216 at 38-39, 74 So.3d at 631; **Nix**, 327 So.2d at 326. Accordingly, the trial court did not abuse its discretion in refusing to find that K.C.'s relationship with her mother, who was raped and murdered, automatically rendered K.C. unable to be impartial in these cases. Although the record establishes a mother/daughter relationship, and this court is sensitive to the impact of crime on a family member, we are constrained by the record which reflects no follow-up questions were posed to in fact establish this prospective juror could not be fair and impartial in these cases.

Upon the trial judge's recognition that K.C.'s relationship with a rape victim was alone insufficient to disqualify K.C., defense counsel referenced K.C.'s response to the trial judge's question regarding her ability to be impartial due to her mother's ordeal. Defense counsel interpreted K.C.'s response as "yes," that is, K.C. could not be impartial in the instant cases against defendant. However, as the trial judge again correctly observed, K.C. did not declare that her mother's rape and murder would affect her ability to be impartial, as her affirmative response was immediately qualified by an expression of uncertainty–"it might." In this respect, K.C.'s testimony differs from that of prospective juror number 20, who testified that as a victim of molestation she could not be impartial and who was dismissed by the trial court on a challenge for cause. Based on the qualification of K.C.'s affirmative response, this court cannot say that the trial court erred or abused its discretion in finding that K.C. at no point declared that she could not be impartial in these cases; nor from this lone response can "bias, prejudice, or the inability to render judgment according to law . . . be reasonably implied," as found by the appellate court. Furthermore, K.C.'s conditional response neither

required that K.C. be rehabilitated, nor relieved defendant (who sought to exclude K.C. for cause) of his burden of demonstrating, through questioning, that K.C. lacked impartiality. See **State v. Taylor**, 99-1311, p. 8 (La. 1/17/01), 781 So.2d 1205, 1214 ("The party seeking to exclude the [prospective] juror has the burden to demonstrate, through questioning, that the [prospective] juror lacks impartiality.").

. . . .

Clearly, La. C.Cr.P. art. 797(2) does not require that a prospective juror state with absolute certainty that he/she cannot be impartial in order to be removed for cause. However, in the absence of such a statement, the trial court's denial of a challenge for cause will not be reversed if, on review of the entire *voir dire* examination, the prospective juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. [**State v.] Passman**, 345 So.2d [874,] 880 [(La.1977)]. Reversal is appropriate only where it appears, upon review of the *voir dire* examination as a whole, that the trial judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused. *Id*.; see **Dorsey**, 10-0216 at 28, 74 So.3d at 625; **State v. Lee**, 93-2810 (La. 5/23/94), 637 So.2d 102, 108. This standard of review is utilized "because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questions by the parties' attorneys." **Lee**, 93-2810 at 9, 637 So.2d at 108. "Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record." **Id**. As noted in **State v. Miller**, 99-0192 (La. 9/6/00), 776 So.2d 396, because of the "complicated and oftentimes daunting" task faced by a trial court in deciding "challenges for cause of prospective jurors who give equivocal . . . responses during *voir dire*," "an appellate court should accord great deference to the [trial] court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Id*., 99-0192 at 14, 776 So.2d at 405-06. A review of the entire record of the *voir dire* proceedings in this case does not suggest that the trial court's exercise of the sound discretion afforded in determining K.C.'s competency was arbitrary or unreasonable, to the prejudicial injury of the defendant in obtaining a fair and impartial trial.

In the case before us, the following five prospective jurors are those at issue in this assignment of error.

**Terry Mestayer**

The following colloquy occurred with Mr. Mestayer when the prospective jurors were asked if they had a relative or someone close to them that had been the victim of domestic violence:

> I have a sister who was verbally and physically abused in her marriage until her divorce for twenty-one (21) years. And I also have a sister-in-law who was in a physical - - they weren't married, but they both have two children together. She had a physical abuse relationship too.

MR. CHARRIER:

> Based on the fact that you have these two relationships with the people that have been victims of domestic violence. Could you put that aside and judge this case based on the evidence that's presented in this case?

JUROR MESTAYER:

> To be honest, no.
>
> . . . .
>
> Because I was raised to believe that a man should not put his hands on a woman for any reason, walk away.

MS. CHARRIER:

> Uh-huh. Right. Well, and like the Judge said, that's pretty much what the law says. And we're asking you to follow the law, but I just I'm wanting to find out if you can put that aside and can judge it based on only the facts in this case. Because what we've got to judge this case on is from the evidence that's going to be presented from the witness stand.
>
> Okay.
>
> I have to present evidence. I have to prove the case to you beyond a reasonable doubt, every element of the crime, which we're going to get into later. But can you put your prior experiences aside and judge it based on what you're going to hear?

JUROR MESTAYER:

As the other gentleman behind me said, honestly I can't say yes or no, it would depend on what evidence exists.

MS. CHARRIER:

If you feel that the evidence is credible evidence and if you tend to believe it if you feel its credible, then would you be able to convict on that evidence?

JUROR MESTAYER:

Possibly.

MS. CHARRIER:

. . . .

So what if you hear some evidence and you think, huh, this is not credible and I have not proven the case beyond a reasonable doubt. Would you be able to return a verdict of not guilty if there's not enough evidence?

JUROR MESTAYER:

If there's not enough, I guess.

. . . .

MS. CHARRIER:

So the question was if there's not enough evidence and you find that the information is not credible would you be able to return a verdict of not guilty?

JUROR MESTAYER:

If there weren't enough, possibly, yes.

When the prosecutor explained that reasonable doubt does not mean having to prove guilt beyond all possible doubt and that it does not have to be 100%, Mr. Mestayer indicated he felt it had to be 100%. When the prosecutor later asked if she proves her case beyond a reasonable doubt, if he could return a verdict of guilty, Mr. Mestayer nodded affirmatively. Defense counsel then asked whether

14

the prospective jurors would vote not guilty if they had a single reasonable doubt in their mind.  Mr. Mestayer indicated that he could.

When defense counsel challenged Mr. Mestayer for cause due to his stated inability to put aside two prior instances of domestic violence in his family and his statement that he would only possibly be able to render a fair and impartial verdict, the trial court responded that he remembered Mr. Mestayer saying that he could return a not guilty verdict if not enough evidence was produced.  The trial court denied the challenge for cause.

We find that the trial court did not abuse its discretion in denying the challenge for cause as to Mr. Mestayer.  As in *Dotson*, Defendant's equivocal responses did not amount to affirmative statements that he could not be impartial.  Additionally, Mr. Mestayer indicated that he could vote not guilty if he had a single reasonable doubt in his mind.

**Shirley Myers**

The trial court asked the prospective jurors if there was any reason that would prevent any of them from giving both sides a fair trial.  Ms. Myers stated she thought "a man should never hit a woman no matter for what reason."  The following exchange later took place between Ms. Myers and defense counsel:

MR. WILLIAMS:

What about you, Miss. Myers?  You stated that you were raised to believe that men don't hit wom[e]n and not to believe in domestic violence?

JUROR MYERS:

Right.

MR. WILLIAMS:

Would you say that is a belief you have had your whole life?

15

JUROR MYERS:

Oh, yes.

MR. WILLIAMS:

Your parents raised you that way?

JUROR MYERS:

Yes, sir, they did.

MR. WILLIAMS:

So it's a deep-seeded [sic] belief?

JUROR MYERS:

Yes. But I think if they can't prove that he actually hurt her it could be somebody else that hurt her, I don't know, you know.

MR. WILLIAMS:

But you'll carry that belief with you if you're chosen for the jury.

JUROR MYERS:

Oh, yes.

MR. WILLIAMS:

If you were chosen for the jury will you carry that belief with you into the back into deliberations?

(Juror Myers nods affirmatively.)

MR. WILLIAMS:

And that belief is not going to change today.

JUROR MYERS:

Well, if they can't prove to me that he did it, no, it won't, it won't change.

Also during voir dire, the prosecutor asked what proof of a crime the prospective jurors would require if there was not a witness or video of it occurring.

Ms. Myers responded, "The evidence. If she's all bruised up or you know, cut or, you know, that kind of thing." Ms. Myers indicated that she could return a verdict of guilty if the State proved its case beyond a reasonable doubt. She also affirmed that she would vote not guilty if she had a single reasonable doubt in her mind.

Defense counsel exercised a challenge for cause because of Ms. Myers's deep-seated belief that domestic violence is wrong and that she would carry that belief into deliberations with her. In response, the prosecutor noted Ms. Myers's indications that that she would not assume Defendant had committed a crime and that the State must prove the elements of its case to her beyond a reasonable doubt. The trial court then denied Defendant's challenge for cause.

We conclude that the trial court did not abuse its discretion in denying the challenge for cause as to Ms. Myers. Ms. Myers indicated that she could return a verdict of guilty if the State proved its case beyond a reasonable doubt and that she would vote not guilty if she had a single reasonable doubt in her mind.

**Tenesa Nelson**

During voir dire, Ms. Nelson stated that her sister-in-law had been murdered by her husband. When asked if she could put that aside and consider the case based on the evidence, she responded that she could and that everyone deserves a fair trial. Ms. Nelson indicated that she could return a verdict of guilty if the State proved the case beyond a reasonable doubt. When asked if her relative's situation caused her to have strong beliefs, Ms. Nelson said:

> I mean, he's been charged with murder instead of domestic violence. Like I said earlier every case is different. It's all about putting the evidence through, you know, to see if he's guilty or not. And like some of the rest of the jurors that did say that I would prefer to hear both sides, not just the actual prosecutor. Like I said there's two sides to a story, you know. It's what he presented, she presented. There's still two sides. You still need to see what happened. So the

charges that he's charged with, you know, you still want to see visual evidence to basically say that he's in the video, he's in the surveillance, you got to actually see that stuff - - he did it.

Ms. Nelson further affirmed that if she had a single doubt in her mind that she would vote not guilty.

Defense counsel raised a challenge for cause on the basis that Ms. Nelson's sister-in-law was murdered in a domestic violence situation and that she indicated that she would "carry" those experiences. The trial court, however, concluded that Ms. Nelson was adequately rehabilitated and denied the challenge.

We find that the trial court did not abuse its discretion in denying the challenge for cause as to Ms. Nelson. She indicated that she could put her sister-in-law's murder aside and consider the case based on the evidence presented, noting that everyone deserves a fair trial. Ms. Nelson indicated that she could return a verdict of guilty if the State proved the case beyond a reasonable doubt.

**Dan LeBlanc**

During voir dire, Mr. LeBlanc indicated that he is a funeral director and embalmer, as well as a commissioned reserve deputy with the Iberia Parish Sheriff's Office. He stated that he knew the law enforcement personnel listed by the prosecutor. He confirmed that he understood reasonable doubt. When asked how he would judge someone's credibility, Mr. LeBlanc explained that he would watch their demeanor and how they answer questions. He was asked, "Does a person's occupation make them more or less believable? Like say if you heard from a police officer or do all police officer[s] tell the truth all the time too? Or do they sometimes ma[ke] mistakes?" He responded, "I would hope under oath they would. Because if not it's jeopardizing their job."

Defense counsel raised a challenge for cause as to Mr. LeBlanc because he thought he would accept the officers' testimonies over testimony from defense witnesses. The prosecutor responded that Mr. LeBlanc is a reserve deputy and does not work daily with the officers who were to be witnesses. The prosecutor further indicated that he recalled Mr. LeBlanc saying that officers are human and could make mistakes. The trial court denied the challenge for cause, and defense counsel objected.

In *State v. Dorsey*, 10-216, pp. 26-27 (La. 9/7/11), 74 So.3d 603, 624, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859 (2012), the supreme court addressed the denial of a challenge for cause based on partiality toward law enforcement:

> Generally, an individual who will unquestionably credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve as a juror. *[State v.] Kang,* 02-2812 at 4-5 [(La. 10/21/03)], 859 So.2d [649,] 652-53 (citing *State v. Allen,* 380 So.2d 28, 30 (La.1980); *State v. Jones,* 282 So.2d 422, 431 (La.1973)). However, we find Jackson's statements during voir dire do not indicate he would automatically give more weight to law enforcement testimony over that of lay witnesses. Instead, Jackson stated he would initially believe a police officer was telling the truth, but could change his mind if the evidence contradicted his testimony. If that were to happen, Jackson further explained, "I might lower to where I put his testimony" and "I would rank it as to where I would place it in my decision." In *State v. Johnson*, this Court found no abuse of discretion when the trial judge denied a challenge for cause of a juror who initially responded he might give slightly more credence to the testimony of a deputy sheriff than other witnesses, but later said he understood officers were capable of committing errors and telling falsehoods. 324 So.2d 349, 352 (La.1975). In the present case, while Jackson initially said he would automatically believe law enforcement testimony he also acknowledged they could make mistakes and arrest innocent people for crimes they did not commit. Jackson's testimony is also similar to that of the prospective juror in *Johnson* because they both said they would try to weigh the testimony of each witness according to the instructions given by the court. As such, *Johnson* supports the district court's denial of the peremptory challenge.

In the instant case, Mr. Leblanc did not unequivocally state that he believes police officers tell the truth all of the time. Rather, he indicated that he hoped they would tell the truth under oath because not doing so would jeopardize their job. We conclude that Mr. Leblanc did not unquestionably credit the testimony of law enforcement officers and, therefore, the trial court did not abuse its discretion in denying the challenge for cause as to Mr. Leblanc.

**<u>ASSIGNMENT OF ERROR NO. 3</u>:**

Defendant contends the trial court erred in failing to advise him of his right to remain silent prior to his admission of identity at the habitual offender proceeding. He argues that the habitual offender proceeding was not fundamentally fair as his admission was not voluntary; he was not apprised of his right to a hearing or his right to remain silent and have the state prove its case; and that there was no plea agreement.

A habitual offender bill was filed charging Defendant as a second or subsequent offender. In its response to the bill, Defendant admitted to paragraphs 1 (the instant convictions in docket number 17-493) and to paragraph 3 (that the instant offenses and the prior offense are felonies). However, he denied the allegations that he was previously convicted in 2010, of attempted second degree feticide, that all of the crimes occurred within the time provided by La.R.S. 15:529.1(C), and that he should be sentenced as a habitual offender.

Defendant was arraigned on the habitual offender bill, he waived the formal reading of the bill, and he entered a plea of not guilty. The habitual offender hearing was held October 31, 2018, after the original sentencing proceeding. At the habitual offender proceeding, the prosecutor submitted into evidence a copy of the bill of information, plea agreement, court minute entry, and guilty plea

20

transcript from the 2010 conviction. Defendant stipulated regarding his identity as the person previously convicted. The trial court proceeded to adjudicate Defendant a second felony offender.

Defendant is correct in his claim that he was not apprised of his right to remain silent and have the state prove its case prior to his admission of identity; therefore, we will consider whether this error was harmless.

In *State v. Dubroc*, 18-143, pp. 18-21 (La.App. 3 Cir. 11/21/18), 261 So.3d 832, 844-46, this court stated as follows:

> We note that, regardless of whether the trial court did not adequately advise Defendant of his right to remain silent, the error is nevertheless harmless. In a similar situation, this court has stated the following:
>
>> It is correct that the trial court did not advise the defendant that he had the right to remain silent and that the state had the burden of proving beyond a reasonable doubt that he was the individual who committed the 2002 offense. It is also correct that "[a]dmissions of identity at a multiple offender hearing implicate the defendant's Fifth Amendment privilege against self-incrimination." *State v. Harris*, 95-900, p. 1 (La.5/19/95), 654 So.2d 680, 680. However, in *Harris*, the supreme court also explained that:
>>
>>> Nevertheless, multiple offender proceedings "simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence." *State v. Martin*, 427 So.2d 1182, 1185 (La.1983). This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the *Boykin* colloquy which must accompany a valid plea of guilty. *Id.*, 427 So.2d at 1185, n.7. In the absence of any allegation or showing that the admission was involuntary, *compare State v. Johnson, supra*, the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental

21

fairness and due process of law. *See Holloway v. Lynaugh*, 838 F.2d 792 (5th Cir.), cert. denied, 488 U.S. 838, 109 S.Ct. 104, 102 L.Ed.2d 80 (1988); *State v. Firmin*, 522 So.2d 1181 (La.App. 4th Cir.), writ denied, 532 So.2d 759 (La.1988).

*Id.*

As noted in *State v. Fletcher*, 00-968, pp. 3-4 (La.App. 3 Cir. 12/6/00), 776 So.2d 1240, 1243, *writ denied*, 01-342 (La. 12/14/01), 803 So.2d 986, this court, addressing an assigned error, discussed the pertinent case law on this issue:

While La.R.S. 15:529.1 does not specifically address the issue of a defendant's right to remain silent, in *State v. Johnson*, 432 So.2d 815 (La.1983), *writ granted on other grounds*, 438 So.2d 1113 (La.1983), *appeal after remand*, 457 So.2d 1251 (La.App. 1 Cir.1984), *appeal after remand*, 471 So.2d 1041 (La.App. 1 Cir.1985), the supreme court concluded that the statute clearly recognizes that a defendant has the right to remain silent and thus implicitly provides that a defendant should be advised by the trial court of this right before he acknowledges or confesses his status as an habitual offender. Thus, the trial court erred in failing to advise the defendant of this right before accepting his admission that he was the person who was convicted of the predicate offenses. The question is whether or not this is harmless error.

As in *Fletcher*, we are called on to determine whether the trial court's failure to advise the defendant of his right to remain silent and of the state's obligation to prove his identity beyond a reasonable doubt is harmless error.

We conclude that it is harmless error. The state introduced the record of the 2002 proceedings without objection from the defendant, and this exhibit establishes the accuracy of the defendant's admission. The defendant was represented by counsel at the habitual offender hearing and, on appeal, the defendant does not assert that his admission was involuntary. *See State v. Payne*, 94-

1628 (La.App. 3 Cir. 5/22/96), 677 So.2d 527. Thus, without the defendant's admission, the trial court would have reached the same result.

*State v. Bias*, 12-610, pp. 3-4 (La.App. 3 Cir. 12/5/12), 2012 WL 6028911 (unpublished opinion), *writ denied*, 14-746 (La. 1/16/15), 157 So.3d 1123.

In *State v. Cook*, 11-2223, pp. 1-2 (La. 3/23/12), 82 So.3d 1239, 1240-41, the supreme court stated the following regarding a trial court's technical non-compliance with the advice of rights required by La.R.S. 15:529.1:

> . . . The requirements of R.S. 15:529.1(D)(1)(a) that the court inform a defendant of the allegations in a habitual offender bill of information, and of his right "to be tried as to the truth thereof according to law," should not serve as technical traps for an unwary but otherwise conscientious judge. . . . It therefore appears that defendant was fully informed of the allegations in the habitual offender bill and of his right to contest those allegations, with a correlative right to remain silent at the hearing, that he thereafter voluntarily stipulated to the habitual offender allegations after conferring with counsel, and that the trial court adjudicated him a habitual offender on the basis of not only his stipulation but also the documentary evidence introduced by the state at the hearing. Defendant's interests were fully protected and any technical non-compliance with the statutory directives in R.S. 15:529.1(D)(1)(a) was harmless. *See State v. Brown*, 11-1656 (La. 2/10/12), 82 So.3d 1232.

As in the above cases, here, the trial court's technical non-compliance with the advice of rights in the present case was harmless error. Before sentencing Defendant as a second habitual offender, the trial court found Defendant guilty of a probation violation, revoked his probation, and ordered that he serve the previously suspended sentence. The trial court heard argument by both parties and then imposed a sentence on each of Defendant's convictions, including the charges for which he was adjudicated a second habitual offender. After the imposition of sentences, defense counsel suggested the court hear the testimony of Defendant's probation officer. The trial court heard the testimony of Defendant's probation officer, who testified that he supervised Defendant while Defendant was on probation for simple robbery. According to the probation officer, Defendant was still on probation when he committed the other charges. In addition to the testimony of Defendant's probation supervisor at the habitual offender hearing, a probation officer testified at trial that her office

23

was currently supervising Defendant's probation for simple robbery. Judge Ron Ware sentenced Defendant on the simple robbery charge on May 17, 2013, and then presided over both Defendant's current trial and his habitual offender hearing. In *State v. Brown*, 11-1656, p. 2 (La. 2/10/12), 82 So.3d 1232, 1234 (quoting *State v. Jones*, 332 So.2d 461, 462 (La.1976) ) the supreme court noted that during a habitual offender proceeding, a trial judge may take judicial notice "of any prior proceeding which was a part of the same case he had previously tried."

In *State v. McGill*, 52,169, pp. 5-6 (La.App. 2 Cir. 8/15/18), 253 So.3d 872, 876, *writ denied*, 18-1552 (La. 3/25/19), 267 So.3d 594, the second circuit discussed the type of evidence that may be used to establish identity at a habitual offender proceeding:

> The Louisiana Supreme Court has repeatedly held that the Habitual Offender Act does not require the state to use a specific type of evidence to carry its burden at a habitual offender hearing. Rather, prior convictions may be proved by any competent evidence. *State v. White*, [13-1525 (La. 11/8/13), 130 So.3d 298]. Various methods of proof establishing identity have been recognized as sufficient to sustain the state's burden of proof, including testimony of witnesses, expert opinion as to fingerprints, photographs contained in duly authenticated records, and evidence of identical driver's license number, sex, race, and date of birth. *State v. Payton*, 2000-2899 (La. 3/15/02), 810 So.2d 1127; *State v. Collins*, [48,782 (La.App. 2 Cir. 2/26/14), 136 So.3d 912]. *See also State v. Stanfield*, 2013-1193 (La. App. 4 Cir. 3/26/14), 137 So.3d 788, *writ denied*, 2014-0833 (La. 11/21/14), 160 So.3d 969 (matching the fingerprints on the bill of information from the initial crime is not required for the state to prove that a defendant charged as a habitual offender is the same person previously convicted); *State v. George*, 2015-1189 (La. App. 4 Cir. 11/9/16), 204 So.3d 704, *writ denied*, 2016-2242 (La. 3/24/17), 216 So.3d 814 (certified conviction packet and the defendant's trial testimony admitting his prior conviction were sufficient to support the defendant's adjudication as a second-felony habitual offender).

> The trial court can properly take judicial notice of the defendant's trial testimony admitting his prior convictions in finding that the state presented sufficient proof at the habitual offender hearing that the defendant was the same person who had pled guilty to the predicate offenses. *State v. Brown*, [11-1656 (La. 2/10/12), 82 So.3d 1232], *citing State v. Jones*, 332 So.2d 461 (La. 1976) (A trial judge may take judicial notice during habitual offender proceedings "of any prior proceeding which was a part of the same case he had previously tried."). *See also State v. Roland*, 49,660 (La. App. 2 Cir.

2/27/15), 162 So.3d 558, *writ denied*, 2015-0596 (La. 2/19/16), 186 So.3d 1174 ("On remand in habitual offender proceedings, another habitual offender hearing presenting evidence to readjudicate is not necessarily required.").

In the present case, there is no indication from the record that Defendant's admission was involuntary, and Defendant was represented by counsel at the hearing. Further, Defendant's social security number, date of birth, and address appearing in the guilty plea transcript of the 2010 conviction is the same as that contained on the Iberia Parish Sheriff Office confinement order pertaining to the instant offenses and contained in the current record. Additionally, the date of birth and address on the documents concerning the 2010 conviction are the same as those appearing on the bill of information for the current offenses. We conclude that this was sufficient proof of identity to render as harmless error the trial court's failure to apprise Defendant of his right to remain silent and have the State prove its case.

## CONCLUSION

For the reasons set forth above, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

This is opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3

25